Matthew M. Levy, J.
The plaintiff has brought suit against the administratrix of the goods, chattels and credits of the decedent. The gravamen of the complaint is in deceit. The plaintiff alleges that the defendant’s intestate represented to her that he was not married and that he and the plaintiff could validly marry, and that, relying upon these representations, she entered into a marriage contract and ceremony with the decedent on or about Julv 5, 1945, and lived with him thereafter as his wife until the *249 time of his death on January 19, 1955. She alleges further that on July 5, 1945, the decedent was (and, for many years prior thereto, had been) married to another, and that that marriage was in fact in full force and effect on July 5,1945, and thereafter during the entire period of his subsequent lifetime. The plaintiff further alleges that she would not have entered into a marriage contract and the religious ceremony with the decedent nor would she have lived with the decedent until his death except for her reliance upon the false and fraudulent representations made to her by the decedent. The plaintiff seeks compensatory and exemplary damages based upon the rendition of wifely services, matrimonial society and connubial consortium to the decedent, the advance of moneys for and on his behalf, the deprivation of an opportunity to find and lawfully to marry a suitable spouse, and her subjection to embarrassment, humiliation, disgrace and mental anguish.
Aside from certain denials not here material, the defendant asserts two affirmative and allegedly complete defenses in her answer. These defenses read as follows:
“ Third: That subsequent to commission of the acts alleged in the complaint herein to constitute fraud and deceit, and with full knowledge and discovery of the facts that decedent had been married and that the wife of decedent had been living on and after July 5, 1945, and was his lawful wife and that there had been issue of said marriage, plaintiff cohabited with decedent and continued to accept the benefits of the alleged marital relationship to have existed between plaintiff and decedent, and that plaintiff duly waived the alleged fraud and deceit of the decedent.” * * *
‘ ‘ Fourth: That the cause of action set forth in the complaint is one to recover moneys for or arising out of breach of contract to marry, which right of action has been abolished by sections 61-a, 61-b, 61-c and 61-d of the Civil Practice Act. ’ ’
The plaintiff has moved before me, pursuant to rule 109 of the Buies of Civil Practice, to strike these defenses as insufficient in law on their respective faces. I shall consider each defense separately.
As to the first defense (par. Third of the answer): It will be recalled that in the complaint the plaintiff alleges that she lived with the decedent from the time of their marriage until the decedent’s death, a period of nearly ten years. In the answer, the defendant alleges, in substance and effect, that the plaintiff continued to live with the decedent subsequent to her discovery that (at the time of his marriage to the plaintiff) he was married to another; that, notwithstanding that she learned that her mar *250 riage to the decedent was bigamous and thus void, she continued to live with him as his wife; and that, with full knowledge of the facts, the plaintiff cohabited with the decedent and continued to accept the benefits of the alleged marital relationship between them; and, in consequence, that the plaintiff ‘ duly waived the alleged fraud and deceit ’ ’ of the decedent.
As I see it, the basic question raised by this motion (in relation to the first defense) is: Does the fact that — some time subsequent to the void marriage ceremony and the commencement of bigamous cohabitation — the plaintiff discoverd that the decedent had been and still was married to another woman, and that, notwithstanding this knowledge, had continued to live with the decedent as his wife, preclude the plaintiff from maintaining this suit? I have been cited, and I have been able to find, no precedent squarely in point. The cases where it appears that the “ wife ” had ceased to live with her “ husband ” immediately upon discovery of the truth are not in point. It seems, therefore, that I must seek to resolve the present issue as an original proposition.
“ Waiver ” is a term much used — and often abused. In different contexts, it denotes different sets of material facts which may or may not be sufficient to bar a party from asserting a right (3 Williston on Contracts [Eev. ed.], § 679, pp. 1963-1964). It does not aid in a solution of the present problem to quote the oft repeated statement that: “ Waiver has often been defined as the voluntary relinquishment of a known right. (Clark v. West, 193 N. Y. 349, 360.) ’ ’ (Ansorge v. Belfer, 248 N. Y. 145, 150; Davison v. Klaess, 280 N. Y. 252, 261.) Where the courts talk in terms of “ waiver ” of a cause of action for fraud, they commonly employ the word to mean something more than the naked intention to surrender the complaint. I have been unable to find any authoritative case which holds that a mere intention to surrender a right — without more — bars a later assertion of that right; and I doubt that the instant cause of action for deceit was waived, if by ‘ ‘ waiver ’ ’ is meant solely an ‘ ‘ intentional relinquishment of a known right”. The language of the cases, at times, is in terms of ‘ waiver ’ ’; but the holdings are on other factual bases entirely.
There are, for example, cases which basically, although not always expressly, invoke the theory of estoppel. May that doctrine be employed to foreclose the plaintiff in the case at bar? I think not. While the doctrine of estoppel in pais is of equitable origin, it is available at law (Wikiosco, Inc., v. Proller, 276 App. Div. 239). But it is the essence of “ estoppel by conduct ” that the one asserting it must have been influenced to change his posi *251 tion in reliance upon the conduct of the one sought to be estopped (Wiedersum v. Atlantic Cement Prod., Inc., 261 App. Div. 305). The defendant in the instant case has not pleaded any facts showing a change of position by the decedent in reliance upon the plaintiff’s continuance of the alleged marital relationship.
“ Waiver of tort ” is the doctrine that, where the commission of a tort results in the unjust enrichment of the defendant at the plaintiff’s expense, the plaintiff may disregard or “ waive ” the tort action and sue instead on a fictitious contract for restitution of the benefits which the defendant has received (Harway v. Mayor, 1 Hun 628; Corbin, Waiver of Tort and Suit in Assumpsit, 19 Yale L. J. 221). This doctrine is obviously inapplicable to the case at bar.
There are cases in which it is said that one who elects an alternative remedy ‘ ‘ waives ’ ’ the other inconsistent alternative remedy. But these cases do not truly hold that the party has "waived ’ ’ a given remedy because of an intention to surrender it. Professor Williston, in his work on Contracts (Rev. ed., Vol. 3, §§ 683, 684, pp. 1969-1971) aptly says:
“ Election as a term in the law is properly applied to a case where a person has the choice of one or two alternative and inconsistent rights or remedies. In choosing the one, he necessarily surrenders the other * * *
11 One who elects one alternative is often said to waive the other; but, unless "waive ’ is given a very broad meaning, the expression is inexact, since he could not have both. His only right was to make a choice * * *.
“ In a correct definition of waiver, wherever that word is used in the sense of election, the requisite of even apparent intention to surrender a right is absent. The law simply does not permit a party in the case supposed to exercise two alternative or inconsistent rights or remedies. Even though he expressly states that he intends to reserve a right, he will, nevertheless, lose it if he takes an inconsistent course.”
One who has been induced to enter into a contract by fraud may elect, after discovering the fraud, to affirm or to rescind the contract. While the remedy of rescission is not available if the party continues with the contract (Brennan v. National Equit. Inv. Co., 247 N. Y. 486; Restatement, Contracts, § 484), the law is well settled that, in situations which do not concern marriage, the mere acceptance of benefits of a contract induced by fraud is not sufficient to prevent the wronged party from claiming and recovering such damages as may have been suffered as a result of such fraud (Potts v. Lambie, 138 App. Div. 144). A plaintiff is not precluded from bringing suit for damages for deceit *252 although he has affirmed the contract subsequent to discovering the fraud — for fraud in the inducement renders a transaction voidable only, not void, and, therefore, the injured party may elect to affirm the contract and sue for damages, or he may rescind the contract and seek to re-establish the status quo (Pryor v. Foster, 130 N. Y. 171; Restatement, Contracts, § 476; 2 Sedgwick on Damages, § 439a, pp. 841-842).
The defendant relies upon Bents v. Bents (188 Misc. 86), and quotes therefrom as follows, at page 88: “ Even assuming fraud at the inception of this marriage, it is inconceivable that plaintiff, as an ordinarily prudent person, would not have discovered that he was the victim thereof before the elapse of more than ten years. In a marriage, as in an ordinary contract, a fraud may be waived, and one who continues, after knowledge of the fraud, to accept the benefits of the contract, may not later be heard to ask for a rescission.” The case is not in point. The plaintiff there sued to annul a marriage on the ground of fraud — that is, he sought rescission, not damages. Section 1139 of the Civil Practice Act specifically dictated the outcome of the case. It provides: ‘ ‘ But a marriage shall not be annulled on the ground * * * of fraud, if it appears that, at any time before the commencement thereof, the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud.” It does not follow that because the State prohibits the annulment of a marriage where the parties cohabited as husband and wife with full knowledge of the facts constituting a fraud otherwise sufficient to obtain an annulment of the marriage, a party may not sue in damages for deceit where he has cohabited with the bigamous spouse subsequent to discovering the truth. Quite different considerations are involved in the two eases.
Obviously, the court in the Bentz case was employing the term “ waiver ” in the sense of “ election ”. But the law did not give the plaintiff in the instant case any choice of remedies — and therefore gave her no true election. Although marriage is a civil contract (Domestic Relations Law, § 10), it is hazardous to view marriage in all of its aspects as an ordinary contract, as that term is employed in the law. A bigamous marriage is void ab initio (Johnson v. Johnson, 270 App. Div. 811, affd. 295 N. Y. 477) and cannot be ratified (McCullen v. McCullen, 162 App. Div. 599). Irrespective of the good faith of one of the parties — indeed, of both — it is absolutely void (Domestic Relations Law, § 6), and, where there is guilty knowledge, it is criminal (Penal Law, §§ 100,101). That being so, the law did not give the plaintiff the option to affirm the bigamous marriage ceremonialized in the *253 instant case. (Landsman v. Landsman, 302 N. Y. 45, 48.) In the circumstances, she had no genuine election of remedies, and therefore she had nothing to “waive” as that term is understood in this context.*
The defense — in conclusory form at least — is here pleaded as one of “ waiver ”, and I have so considered it thus far. But, reading the pleading — as I should — most favorably to the pleader (Harrison v. Winchell, 207 Misc. 275, 278), I shall now ignore the defendant’s own nomenclature, and consider only the basic allegations of fact contained in the answer. As such, I shall now take the defense as if it pleads not waiver by the plaintiff, but that public policy requires that the plaintiff’s cause of action be barred.
The determination of what suit should or should not be barred because of public policy is not to be made in a vacuum. All factors must be taken into account. There is, of course, a recognizable public interest in seeking to dissuade persons from marrying bigamously and from living- adulterously. The law favors the lawful wife and the lawful children. It is they who maintain the family unit. It is they who would normally inherit the husband-father’s estate. Although only a misdemeanor in the eyes of the criminal law (Penal Law, §§ 100,101) —and one rarely prosecuted — promiscuous indulgence may seriously endanger the essential institutions of marriage, family and property rights. Yet, it may be that the public policy of the law of this State — in its interdiction of the practice of polygamy — would be better served if it were known that a husband (already having one woman as his wife as a result of valid existing marriage bonds) who deceitfully induced an innocent second woman to marry him would (whether he be alive or dead) subject his economic substance to the satisfaction of the claim for damages of the defrauded woman. In my view, guiltless participation in such a marriage and relationship is an exculpatory factor — just as violation of the law, with scienter in limine, is a condemnatory *254 one. If in reverse, the plaintiff had knowledge ab initio, there would be, as matter of ancient legal doctrine, no cause of action in deceit, for there would be absent the necessary element of reliance upon the deceased’s representations. And the principle of public policy need not be probed.
What, if (as here alleged) initial ignorance on the part of the plaintiff has, with the passage of time, been turned into informed continuance of the unlawful relationship? Does that so taint the plaintiff’s claim — nunc pro tunc — as completely to bar her from presenting it — notwithstanding earlier reliance? I think not. Where there is affirmative fraud on the part of one party, and no original sin on the part of the other, I do not conceive that the public policy invoked is so unyielding. The statutes of our State do not forbid a suit of this type (in this connection see my discussion hereinafter of the sufficiency of the second defense) and I think that the courts on their own should not do so. Matter of Lieberman (50 F. Supp. 121, IT. S. Dist. Ct., E. D., N. Y.) involved an application for naturalization of a woman who had entered into a marriage in New York which was (in the eyes of the laws of that State) incestuous. The parties continued to live together for a time as husband and wife, after having learned that their marriage was void. The court held that that fact did not warrant a finding that the wife was guilty of moral turpitude. And, similarly, in Matter of R-(56 F. Supp. 969, IT. S. Dist. Ct., Mass.), the court held that a female applicant for citizenship was of good moral character, although (having married and lived with a man in the honest but mistaken belief that his previous divorce was legally valid), she continued to live with him after she had discovered the invalidity of that divorce.
The first defense, pleaded as a complete one, is therefore stricken. But the matter of the measure of damages is another thing, and is one, in the circumstances here, that may be properly raised by way of defense — partial, as distinct from complete. If the fact be that the plaintiff learned the truth immediately after her marriage ceremony or the commencement of cohabitation, her just claim would be in less amount than would be the case had she discovered the facts years later, and at a time when it might have been difficult, if not impossible, for her to have ceased living in the abode of the man she had for so long innocently assumed to have been her lawful husband. On the other hand, it may be that some of the alleged damages suffered by the plaintiff were caused by her continuing to live with the decedent subsequent to learning that he had been and still was lawfully married to another woman, and an unreasonable unwillingness on the plaintiff’s part to change her status. At what point during the plaintiff’s ten- *255 year tenure as “ wife ”, and in relation to what facts, she became aware of her now deceased “ husband’s ” deceit and of her consequent bigamous status, does not appear from the defense as now pleaded. Other factors may reduce the plaintiff’s claim as alleged in her complaint. The defendant may properly plead matters in reduction of compensatory damages or in mitigation of those that are punitive in character (Civ. Prac. Act, § 262). I shall therefore give the defendant leave to replead.
Now, as to the second defense (par. Fourth of the answer). It is settled law that, in the absence of any statutory prohibition, a woman has an action in deceit against a man for inducing a putative marriage by knowingly false representations when in fact he had no capacity to marry (Blossom v. Barrett, 37 N. Y. 434). The defense as asserted attacks the complaint on the ground that the cause of action alleged therein is prohibited by statute (Civ. Prac. Act, art. 2-A). Section 61-b of that article is the applicable legislative enactment. Adopted in 1935, it provides that the ‘ ‘ rights of action heretofore existing to recover sums of money as damage for the alienation of affections, criminal conversation, seduction, or breach of contract to marry are hereby abolished.” Does the plaintiff’s cause of action come within the purview of this ban f I think not.
As I see it, the abolition of the named causes of action does not entail the concomitant abolition of the cause of action for knowingly engaging in an unlawful marriage. And that is the basic burden of the present action. The complaint is that the plaintiff was induced to enter into a void marriage with the decedent in reliance on his willfully false representation that he was single and unmarried. The defendant argues that there would be no basis for the present action had there not been a promise of marriage by the decedent and a failure to keep such promise, and that therefore the plaintiff’s cause of action is based upon a breach of contract to marry. I do not go along with this contention. The plaintiff does not here assert that the decedent wronged her in failing to marry her; rather, she is asserting that decedent wronged her in fraudulently inducing her to marry him. The plaintiff’s complaint is based on what the decedent did, and not on what he refused to do.
The case of Sulkowski v. Bzewczyk (255 App. Div. 103), relied upon by the defendant, is not helpful. There the plaintiff merely accepted the proposal of marriage. In my view, a relevant distinguishing factor here is that the marriage in fact was entered into and consummated. Nor is Andie v. Kaplan (263 App. Div. 884, affd. 288 N. Y. 685), also cited by the defendant, applicable to the case at bar — as an examination of the record and briefs will show. And, insofar as contrary views may be *256 expressed in Grunberg v. Grunberg (199 Misc. 249) and in Bressler v. Bressler (133 N. Y. S. 2d 38) I disagree with them. A cause in point — with which I agree — is Snyder v. Snyder (172 Misc. 204), where the court said (p. 205):
“ In the final analysis the constitutional power to legislate with respect to actions for breach of promise of marriage rests in the inherent right of the Legislature to regulate the marriage r elan on itself, to the end that marriage should not be entered into because of the threat or danger of an action to recover mon-'iy damages and the embarrassment and humiliation growing out <4 such an action.’ (Fearon v. Treanor, 272 N. Y. 268, 274.)
“ An action to recover damages because of a consummated bigamous marriage is not one which is subject to abuse or manipulation by unscrupulous persons. It is neither within the letter nor the intendment of the law.
‘ The gravamen of this complaint is the injury resulting from the change of status of the parties. In no conceivable aspect is the plaintiff seeking damages for any breach of promise to marry. Accordingly there has been no resort to the form of action in deceit as a subterfuge and attempt to circumvent the statutory prohibition.”
This being so, the complaint is sufficient and not within the prohibition of section 61-a et sequens of the Civil Practice Act. The second affirmative defense is therefore stricken.
In sum, the plaintiff’s motion to strike both defenses is granted, with leave to the defendant to serve an amended answer in respect of the matter set forth in paragraph “ Third ” of the present answer, so as to plead the same as a partial defense. An order has been signed accordingly.

 Nor am I convinced that, even from a bare financial viewpoint, instant nonaffirmance and prompt suit for rescission would have afforded the plaintiff complete redress for the wrong done her. No doubt, if, during the lifetime of the plaintiff and her assumed lawful spouse, she — being enabled in some respects to escape the effect of the deceit upon learning the truth — had sued her “ husband ” to annul the void marriage or to declare its nullity, and assuming that the jurisdictional conditions attached to the maintenance of the action existed (Civ. Prac. Act, § 1165-a), the court might have granted her temporary or permanent support (Civ. Prac. Act, §§ 1140-a, 1169) limited in payment, of course, during the period of their joint lifetime. But that — I take it — is no complete defense to the plaintiff's cause of action in fraud — for alimony is not necessarily on a par with or an adequate substitute for damages.