SHARON K. K. TUCK, Respondent, *v.* FREDERICK TUCK, III, Appellant.

First Department, March 5, 1963.

*Raphael P. Koenig* of counsel (*Jerome R. Halperin* with him on the brief; *Koenig & Ratner,* attorneys), for appellant.

*Edward R. Downing* of counsel (*John A. Gleason* with him on the brief), for respondent.

EAGER, J. The appeal here is from an order denying a motion to dismiss, for alleged insufficiency on the face thereof, the plaintiff's first alleged cause of action. The position of the defendant is that the cause of action is in the nature of one to recover for seduction or breach of promise to marry and, as such, is outlawed by article 2-A of the Civil Practice Act.

The complaint alleges that "on or about October 21, 1960, defendant induced plaintiff to enter into a contract of marriage", and there are set forth certain acts and conduct on the part of defendant which would reasonably lead the plaintiff into believing that the defendant intended to enter into a valid marriage with her. It is then further alleged that on or about October 25, "the defendant told the plaintiff that he arranged everything for the marriage ceremony to be performed before a local judge in the State of New Jersey"; that the plaintiff accompanied the defendant to a certain place in New Jersey and upon "arriving there, the defendant discussed the marriage ceremony with several men who were present and who appeared to be known to the defendant. Defendant induced the plaintiff to sign certain papers which defendant returned to the person officiating at the marriage ceremony. The marriage ceremony was performed and plaintiff and defendant were declared husband and wife, during which time the ceremonial gold band wedding ring was placed by the defendant on the plaintiff's third finger, left hand."

It is further alleged in the complaint that, following the alleged purported marriage ceremony, the defendant "represented to the plaintiff and to the third parties that they were duly married and were living together as husband and wife"; that the plaintiff relied upon the purported marriage ceremony and the subsequent representations of the defendant; that she believed that she and the defendant were duly married and were living together properly as husband and wife; that they continued until July, 1961 to live together, and, then, at a time when the defendant was having an affair with another woman, the defendant told the plaintiff that they were not legally married and there-

upon the plaintiff left the defendant; that, subsequently, in October, 1961, the defendant did marry another woman and that the defendant subsequently has stated that at no time was he married to the plaintiff. Finally, it is alleged that by reason of the fraud of the defendant, the plaintiff " sustained irreparable damage to her person and reputation, and still suffers severe emotional stress and nervous shock with continued mental pain, anguish and distress, and has been obliged to undergo medical and other aid and attendance, and is unable to engage in any occupation or employment, and has been deprived of income, earnings and support ", all resulting in her damage in a very substantial sum.

On the basis of the foregoing allegations, the defendant contends that plaintiff's cause of action is nothing more than a cause to recover damages arising out of a breach of a promise of marriage and for seduction following such promise. On the other hand, the plaintiff, seeking to avoid the bar imposed against such actions by article 2-A of the Civil Practice Act, insists that this action lies as one to recover damages resulting from the fraudulent inducement of a putative marriage; and, in this connection, the plaintiff relies upon a line of decisions holding that an action for deceit will lie against a man who, by means of fraudulent misrepresentations as to his capacity to marry, induces a woman to enter into a void or voidable marriage with him.[1]

By statute here in New York, it is expressly provided that " [t]he rights of action heretofore existing to recover sums of money as damage for the alienation of affections, criminal conversation, seduction, or breach of contract to marry are hereby abolished." (Civ. Prac. Act, § 61-b.) Furthermore, there is the express provision that it shall be unlawful for any person, either as party or attorney, to file or serve " any process or pleading, in any court of the state, setting forth or seeking to recover a sum of money upon any cause of action abolished or barred by this article, whether such cause of action arose within or without the state " (Civ. Prac. Act, § 61-e). Consequently, as affecting the right to sue here upon plaintiff's alleged cause of action, it is immaterial that defendant's fraudulent conduct and plaintiff's damage, as alleged, occurred in part outside the State. (See 2 Carmody-Wait, New York Practice, §§ 21, 22, pp. 19, 20;

1. (See *Blossom* v. *Barrett,* 37 N. Y. 434; *Benintendi* v. *Benintendi,* 1 Misc 2d 474, affd. 273 App. Div. 969, affd. 298 N. Y. 848; *Friedman* v. *Rubin,* 4 Misc 2d 248, affd. 3 A D 2d 827; *Levine* v. *Levine,* 1 Misc 2d 100; *Snyder* v. *Snyder,* 172 Misc. 204; *Morris* v. *MacNab,* 25 N. J. 271. Cf. *Cohen* v. *Kahn,* 263 App. Div. 728, affg. 177 Misc. 18; Ann. 72 A. L. R. 2d 956.)

*O'Connor* v. *Johnson,* 74 F. Supp. 370; *Calcin* v. *Milburn,* 176 F. Supp. 946. Cf. *Parker* v. *Hoefer,* 2 N Y 2d 612; *Neporany* v. *Kir,* 5 A D 2d 438.) Indeed, the plaintiff concedes, as she must, that her right to maintain the cause of action in this State depends upon whether or not the particular cause, as alleged, may be excluded from the causes intended to be outlawed by article 2-A.[2]

Specifically mentioned as included within the statutory ban were actions to recover damages for seduction. Here, the legislative intent was obvious. The term "seduction", as related to a wrong against a woman, was a term of settled meaning. It was well understood to embrace all acts and conduct of a man, without the use of force, in wrongfully inducing a woman to surrender herself to his embraces and sexual desires. (See 79 C. J. S., Seduction, § 1, p. 955; Black's Law Dictionary [4th ed.], 1951; Anderson's Dictionary of Law [1889 ed.].) And, the means of persuasion generally used by the man, and within the purview of the statute as well known to the Legislature, were promises of or the fraudulent pretense of marriage. In fact, seduction "under promise of marriage, or by means of a fraudulent representation to her [the woman] that he [the man] is married to her" was, by Penal Law provision, made punishable as a felony where the woman was unmarried and of previous chaste character. (Penal Law, § 2175.) Having in mind these Penal Law provisions, it was obviously the intent of the Legislature, in the abolition of the civil remedies for seduction, to restrict the righting of wrongs in this area, "so far as they can be righted at all", to suitable Penal Law provision rather than to allow "the recovery of money damages in a court of law".[3] (See *Aadland* v. *Flynn,* 27 Misc 2d 833, 838, affd. 14 A D 2d 837.)

---

2. Incidentally, the two other States where relevant acts occurred, namely, New Jersey and California, also have statutes expressly abolishing causes of action for seducation or breach of promise to marry. (N. J. Stat. Ann., §§ 2A:23-1, 23-2; California Civil Code, § 43.5.) In California, however, the cause of action for seduction, which is barred is seduction "of a person over the age of legal consent" (see California Civil Code, § 43.5), but the plaintiff here was an adult. In New Jersey, which was the site of the alleged fraudulent pretense of marriage, it is expressly provided that "no act done in the state * * * shall operate to give rise, either within or without this state, to any of the rights of action abolished." (N. J. Stat. Ann., § 2A:23-2.)

3. Governor Lehman, in approving the law, pointed out that the abolition of the particular "court actions to recover sums of money as damages * * * does not in any way curtail or eliminate the provisions of the Penal Law." (Public Papers of Governor Lehman, 1935, p. 329.)

Moreover, the statute, read as a whole, is plainly directed to outlaw in this State all actions for damages which are grounded on an alleged fraudulent promise or pretense of marriage. There can be no question with respect to the legislative intent in this regard. It had been found that the actions specifically enumerated, including the remedies provided for the enforcement of actions based upon a breach of contract to marry, had been "subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances," and that such remedies had "been exercised by unscrupulous persons for their unjust enrichment, and * * * furnished vehicles for the commission or attempted commission of crime and in many cases * * * resulted in the perpetration of frauds"; and it was expressly declared "as the public policy of the state that the best interests of the people of the state will be served by the abolition of such remedies." (Civ. Prac. Act, § 61-a.) This declared public policy, the broad directive abolishing all actions for damages based upon a breach of contract to marry, and the provisions mandating a liberal construction for the statute (Civ. Prac. Act, § 61-h), make unmistakable the intent of the Legislature. It was acting not only to bar the conventional breach of promise suit, but intended also to outlaw all claims on any hypothesis for a recovery of damages for seduction, blighted affections, wounded pride, humiliation and the like, where arising out of an unkept promise or a pretense of marriage. Included were all such claims grounded on allegations of fraud and deceit in connection with such promise. (See 2 Carmody-Wait, New York Practice, § 25, pp. 22, 23; *Sulkowski* v. *Szewczyk*, 255 App. Div. 103; *Grunberg* v. *Grunberg*, 199 Misc. 249, 250.)

Here, the gravamen of the plaintiff's cause of action are the fraudulent promises and the fraudulent pretense of a marriage. The damages she would recover are exactly those which were recoverable in the former breach of promise action. (See 11 C. J. S., Breach of Marriage Promise, § 40 *et seq.*) The fact is that the damages which the plaintiff has sustained by reason of seduction, induced by such promises and the pretense of marriage, were, prior to the enactment of the statute, provable in aggravation of or as an element of the damages recoverable in a breach of promise case. (See *Wells* v. *Padgett*, 8 Barb. 323; *Fearon* v. *Treanor*, 272 N. Y. 268, 272; *Sulkowski* v. *Szewczyk*, *supra*; *Thibault* v. *Lalumiere*, 318 Mass. 72.) So, being recoverable in a cause of action for breach of contract to marry, the right to damages of the nature sought here has necessarily been

extinguished by the statutory abolition of such a cause.[4]  (See *Sulkowski* v. *Szewczyk, supra*; *Thibault* v. *Lalumiere, supra.*) And, allegations of the fraudulent arrangement of a fake or bogus marriage ceremony, as part of the deceit practiced on a plaintiff, may not operate to circumvent the effect of the statute. Even with such allegations, the theory and gravamen of plaintiff's alleged cause are the same (see *Grunberg* v. *Grunberg, supra,* p. 251).

Finally, the plaintiff's alleged cause is not supported by *Blossom* v. *Barrett,* (37 N. Y. 434, *supra*) (decided long prior to the enactment of art. 2-A), and the more recent decisions (footnote 1), holding that actions are maintainable for fraudulently inducing a bigamous or other marriage in form duly solemnized but void or voidable in law for facts alone known to and fraudulently concealed by the defendant. Such actions have been sustained upon the ground that they are not within the purview of article 2-A of the Civil Practice Act as actions for seduction or breach of contract to marry in that the gravamen thereof is not the unfulfilled promise of marriage and fraud and deceit in connection therewith but, rather, the basis thereof is the fraudulent consummation of a marriage. In all cases where such actions have been allowed, there was a solemnization of the marriage in conformity with law, but the marriage was void or voidable for facts dehors the solemnization; and, consequently, it was held that the actions were not subject to the well-known evils and unscrupulous manipulations sought to be eliminated by the law. Here, however, the plaintiff's cause is clearly within the letter and the intendment of the law. In essence, it it a cause for seduction on basis of false pretenses of a marriage which was sham and invalid on its face and, thus, within the letter of the law. Clearly, too, the cause is within the intendment of the law in that the very public policy underlying the legislation in this area condemns, as subject to grave abuses, any claim for damages based on an illicit relationship alleged to have been induced by such pretenses.

"Marriage is more than a personal relation between a man and woman.  *  *  *  It constitutes an institution involving the highest interests of society. It is regulated and controlled by law based upon principles of public policy affecting the welfare

---

4. In fact, there is the general observation in a recent American Law Report note that "a statute, entirely abolishing and barring actions for breach of promise to marry, would seem clearly to bar a breach of promise action founded on the theory that the defendant had breached his promise to marry the plaintiff by leading her into a purported marriage which was illegal and void or merely pretended and nonexistent." (Ann. 72 A. L. R. 2d 981.)

of the people of the State '' (*Fearon* v. *Treanor,* 272 N. Y. 268, 272, *supra*). Consequently, the matter of how a marriage may be solemnized and made effective is the subject of statutory regulation[5] (see Domestic Relations Law, art. 3), and the validity of a marriage depends upon compliance therewith. The assumption without such compliance, of a putative marriage relationship is most strongly disapproved of by law and society. It is not only a grave offense against community morals but may result in very serious social problems and most tragic personal consequences, particularly if children are born to the parties. So, clearly, it is the direct responsibility of both parties, the man and the woman, to see to it that the requirements of law with respect to the licensing and solemnization of the marriage are met. Public policy requires that a woman must share responsibility for the illicit relationship resulting from the failure to comply with the law.

To open the door to a cause of action, such as attempted to be pleaded here, would certainly tend to encourage the unscrupulous manipulations and the very abuses which the Legislature sought to eliminate. Obviously, if this action be maintainable, then an illicit relationship entered into on basis of a promise to marry could, for fraudulent purposes, be readily maneuvered by a party into an actionable status by a claimed reliance upon the other's assurances as to the validity of a common-law or other putative marriage. This was just the sort of thing the Legislature was seeking to prevent.

The order appealed from should be reversed, with costs, and the motion to dismiss plaintiff's first alleged cause of action should be granted, with costs.

McNALLY, J. (dissenting). The question presented is whether an action in deceit may be grounded on a putative marriage induced by a contrived sham civil ceremony.

We have sustained an action for deceit resulting in a bigamous marriage consequent on defendant's false representation that he was unmarried. (*Friedman* v. *Libin,* 4 Misc 2d 248, affd. 3 A. D 2d 827; accord: *Blossom* v. *Barrett,* 37 N. Y. 434; *Benintendi* v. *Benintendi,* 298 N. Y. 848.) A bigamous marriage is void (Domestic Relations Law, § 6) as is an unsolemnized one (*id.* § 11). Hence the legal effect in each case is identical.

While there may be differences between a void bigamous marriage and one which is void for failure properly to solemnize it, those differences should not lead to any distinction in treatment

5. There are also such regulations in New Jersey. (N. J. Stat. Ann., §§ 37:1-2 to 37:1-26.)

where the marriage is induced by fraud. The gravamen of a complaint in fraud and deceit in both types of cases is that a defendant took certain affirmative, fraudulent steps which resulted in damage to plaintiff. In other words, defendant is not being charged with nonfeasance in failing to keep a promise but with active misfeasance. The charge is not that plaintiff was wronged by defendant's failure to marry her but that she was injured by defendant's affirmative, fraudulent acts in the performance of what developed to be a void civil ceremony.

Like the bigamous marriage, a ceremony was in fact performed, albeit by someone who, to the knowledge and connivance of defendant, and unknown to plaintiff, was not qualified to perform it. That proof may be more easily obtained to establish the marriage ceremony in the case of a bigamous marriage is not controlling since we are dealing here with a pleading whose allegations must be accepted as true. Assuming the truth of the allegations, it is apparent that this action for fraud is not a subterfuge to circumvent the statutory prohibition against actions for breach of promise to marry. A statute designed to prevent fraud should not unnecessarily be extended by construction to assist in the perpetration of a fraud.

The gravamen of an action for deceit in the inducement of a marriage relation is the change of status. (*Leventhal* v. *Liberman,* 262 N. Y. 209, 212; *Snyder* v. *Snyder,* 172 Misc. 204, 205; *Friedman* v. *Libin, supra,* p. 256.) Often effected by a promise of marriage, nevertheless a change of status is not an essential of the action for seduction. Therefore, in proscribing actions for seduction article 2-A of the Civil Practice Act does not preclude this action for deceit. (See Ann. 72 A. L. R. 2d 982.)

We are presently concerned only with the legal sufficiency of the first cause of action. Whether in fact the plaintiff was deceived involves factual considerations. It is not the law, however, that one circumstanced as the plaintiff may not rely on the representations alleged to have been made by this defendant. (*Blossom* v. *Barrett, supra,* p. 436; *Mead* v. *Bunn,* 32 N. Y. 275, 280; *Benintendi* v. *Benintendi, supra.*)

Defendant is not aided by considerations of public policy. Article 2-A expresses the public policy to discourage marriages resulting from the threats incident to the actions thereby proscribed. (*Fearon* v. *Treanor,* 272 N. Y. 268, 274.) It is not the public policy to enable the utilization and exploitation of the marriage ceremony for a fraudulent purpose be it in the form of a bigamous or sham marriage.

Accordingly, I dissent and vote to affirm the order.

RABIN, J. P., and STEUER, J., concur with EAGER, J.; McNALLY, J., dissents in opinion in which VALENTE, J., concurs.

Order, so far as appealed from, entered on June 27, 1962, reversed, on the law, with $20 costs and disbursements to appellant, and the motion to dismiss plaintiff's first cause of action granted, with $10 costs.