Cleveland BROWN, Plaintiff,

v.

**Adam STRUM, Defendant.**

**No. CIV. 3:03CV1969JBA.**

United States District Court, D. Connecticut.

Dec. 22, 2004.

David Scott Feldman, Law Offices of Philip Russell, Greenwich, CT, for Plaintiff.

Robert O. Hickey, Robert C.E. Laney, Ryan, Ryan, Johnson & Deluca, Stamford, CT, Alan E. Sash, Peter C. Alkalay, McLaughlin & Stern, New York, NY, for Defendant.

### *MEMORANDUM OF OPINION ON DEFENDANT'S MOTION TO DISMISS [DOC. # 15]*

ARTERTON, District Judge.

Plaintiff Cleveland Brown brings a personal injury lawsuit against Adam Strum, alleging fraud and intentional infliction of emotional distress after the termination of their two-month romantic relationship. The complaint alleges that the defendant falsely represented to the plaintiff during the course of the relationship that he was divorced, when in fact he was married and had no intention of seeking a divorce from his wife. The complaint invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332. Defendant now moves to dismiss the complaint for failure to state a claim upon which relief may be granted, under Fed.R.Civ.P. 12(b)(6). For the reasons that follow, Defendant's Motion to Dismiss [doc. # 15] is **GRANTED**.

## I. FACTUAL BACKGROUND

The following facts are alleged in the complaint. Brown and Strum were members of an online dating service known as Match.Com. On September 17, 2002, Strum read the plaintiff's online profile and emailed her through the Match.Com service. Brown viewed Strum's online profile, which indicated that Strum was divorced, and then answered his email. On September 24, 2002, the parties spoke over the phone, and Strum again, in answer to a question from Brown, represented that he was divorced and looking to remarry and have more children.

Over the next few weeks, Brown and Strum met in person several times. The complaint does not specify where the parties met; the plaintiff is from Stamford, Connecticut and the defendant from Mt. Kisco, New York. The parties also spoke on the telephone "almost daily" during this time. Compl. ¶ 20. On the weekend of October 4, 2002, Strum and Brown went to Puerto Rico together. They saw each other several times over the next few weeks, and "engaged in sexual relations on most occasions." *Id.* at ¶ 19.

Brown alleges that throughout this time, Strum "kept reinforcing [her] belief that he was divorced and interested in marrying her." *Id.* at ¶ 22. "On at least one occasion the Defendant took the Plaintiff to look at homes to purchase together [to] be the marital residence." *Id.* at ¶ 23.

Finally, the plaintiff alleges that she had been emotionally and physically abused by her parents when she was a child, that the defendant knew this fact, and that, being

"trained in the behavioral sciences," he exploited her vulnerabilities to convince her to have sex with him. *Id.* at ¶ 24–28.

## II. STANDARD

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). To survive the motion, the plaintiff must set forth " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), quoting Fed.R.Civ.P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 (footnote omitted); *see also Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. DISCUSSION

Plaintiff argues that Defendant's conduct amounts to fraud because he induced her to enter a romantic relationship and to engage in sexual relations upon the false representation that he was unmarried. She further alleges that the defendant's conduct amounted to intentional infliction of emotional distress because he knew that she was particularly vulnerable and took advantage of her sensitivities. The defendant counters that plaintiff's complaint is no more than an attempt to circumvent statutes in Connecticut and New York that eliminated so-called "heart balm" causes of action, including seduction, breach of promise to marry, criminal conversation, and alienation of affections.

### A. Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore Connecticut's choice of law rules must be applied in this diversity case. "The threshold choice of law question in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between the applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdictions should be applied." *Lumbermens Mut. Cas. Co. v. Dillon Co.,* 9 Fed.Appx. 81, 83 (2d Cir.2001) (citing *Haymond v. Statewide Grievance Comm.,* 45 Conn.Supp. 481, 723 A.2d 821, 826 (1997), *aff'd,* 247 Conn. 436, 723 A.2d 808 (1998)).

The outcome-determinative legal issue in this case is whether there exists a cause of action for seduction or breach of promise to marry. Connecticut and New York laws are identical in this regard. As discussed *infra,* § III.B., both jurisdictions have abolished a cause of action for breach of promise to marry. Conn. Gen.Stat. § 52–572b, N.Y. Civ. Rights. L. § 80–a. New York also abolished by statute a woman's common law cause of action for seduction, N.Y. Civ. Rights L. § 80–a, while Connecticut never allowed it in the first place. Thus there is no need to perform a choice of law analysis, and the rules

common to both Connecticut and New York will be applied.

## B. Common Law "Heart Balm" Actions

■ At common law, a plaintiff could bring a variety of damages actions arising in the context of romantic relationships. These included causes of action for alienation of affections, criminal conversation, seduction, and breach of promise to marry. Only a spouse could bring an action for alienation of affections or criminal conversation; the former tort action provided redress against a third party who won the love of the plaintiff's spouse, while the latter involved sexual intercourse with the plaintiff's spouse. *Lombardi v. Bockholdt,* 167 Conn. 392, 355 A.2d 270, 271 (1974) (suit against third party for criminal conversation and alienation of affections based upon defendant's extramarital affair with plaintiff's wife), *Bouchard v. Sundberg,* 80 Conn.App. 180, 834 A.2d 744, 752 n. 13 (2003) ("The common-law traditional heart balm tort of alienation of affections is a cause of action against a third party adult who 'steals' the affection of the plaintiff's spouse."). Because no spousal relationship is alleged, these two tort actions are inapplicable here.

At common law in Connecticut, a cause of action for seduction belonged to the parent of a dependant child who was seduced, and allowed the parent to recover damages for, *e.g.,* loss of the child's services or the expense of delivering an out-of-wedlock baby. *See Bixby v. Parsons,* 49 Conn. 483, 484–85 (1882). In Connecticut, a woman could not maintain a cause of action for her own seduction, absent an allegation of forcible rape. *See Steigman v. Beller,* 17 Conn.Supp. 62 (Conn.Super.Ct.1950). Thus Brown's action could not have been maintained on her own behalf as a seduction claim in Connecticut. New York common law, however, allowed a woman to maintain an action for seduction on her own behalf. *See Manko v. Volynsky,* 1996 WL 243238 at *2, No. 95–Civ–2585 (MBM) (S.D.N.Y. May 10, 1996), *Coopersmith v. Gold,* 172 A.D.2d 982, 984, 568 N.Y.S.2d 250 (N.Y.App.Div.1991).

Under both Connecticut and New York common law, there existed a tort action for breach of a promise to marry. This action could be maintained by an unmarried plaintiff who received and relied on the defendant's promise to marry him/her, which the defendant broke. *See Dionisio v. Tiganelli,* 14 Conn.Supp. 278 (Conn.Super.Ct.1946). Commonly, such tort actions were brought when a fiancé "enter[ed] into and [broke] off a sexual relationship by means of allegedly false promises" to marry the plaintiff. *Sanders v. Rosen,* 159 Misc.2d 563, 605 N.Y.S.2d 805, 811 (N.Y.Sup.Ct.1993).

Both Connecticut and New York have statutorily abolished the cause of action for breach of promise to marry. Conn. Gen. Stat. § 52–572b,[1] N.Y. Civ. Rights L. § 80–a.[2] New York also abolished its common law cause of action for seduction, *id.,* and even criminalized the filing of any lawsuit alleging any abolished heart balm

---

1. "No action may be brought upon any cause arising from alienation of affections or from breach of a promise to marry." Conn. Gen. Stat. § 52–572b.

2. "The rights of action to recover sums of money as damages for alienation of affections, criminal conversation, seduction, or breach of contract to marry are abolished.

No act done within this state shall operate to give rise, either within or without this state, to any such right of action. No contract to marry made or entered into in this state shall operate to give rise, either within or without this state, to any cause or right of action for its breach." N.Y. Civ. Rights L. § 80–a.

claim. N.Y. Civ. Rights L. §§ 81, 83.[3]

The Connecticut Supreme Court explained its legislature's reasoning in barring heart balm actions as follows:

> ... the Act was designed to do away with excessive claims for damages, claims coercive by their very nature and, all too frequently, fraudulent in character; the purpose was to prevent the recovery of damages based upon contused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which the marriage offered.

*Piccininni v. Hajus,* 180 Conn. 369, 429 A.2d 886, 888 (1980). The New York legislature was motivated by similar concerns, namely avoiding "grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage" that were attendant to seduction and breach of promise to marry actions. *Tuck v. Tuck,* 18 A.D.2d 101, 105, 238 N.Y.S.2d 317 (N.Y.App.Div.1963).

### C. Emotional Distress and Fraud

Courts of both states have held that a plaintiff may not circumvent the statutory prohibition on heart balm actions by re-characterizing them as emotional distress or fraud claims. To determine whether a plaintiff has a bona fide claim or is simply using an emotional distress claim to evade the anti-heart balm statute, courts look to the underlying factual allegations of the complaint. For example, in *Sanders v. Rosen,* 159 Misc.2d 563, 605 N.Y.S.2d 805, 811 (N.Y.Sup.Ct.1993), the plaintiff sued her former divorce attorney, alleging that he induced her to begin a romantic relationship soon after her divorce, talked about getting married, wrote a will for the plaintiff with himself as beneficiary, but then terminated the relationship and demanded that the plaintiff move out of his apartment. *Id.* at 807. The court found that the complaint had "the earmarks of the earlier actions for seduction or breach of promise to marry, i.e., entering into and breaking off a sexual relationship by means of allegedly false promises." *Id.* at 811. Although the plaintiff had characterized her claim as infliction of emotional distress, the court found that the allegations "fall into the category of fall-out from heartbreak," and therefore were not cognizable in the New York courts. *Id.* at 812.

Similarly, Connecticut courts "in determining whether an action is barred by § 57–572b, ... consider the underlying conduct alleged in the plaintiff's complaint." *Bouchard v. Sundberg,* 80 Conn. App. 180, 834 A.2d 744, 756 (2003). They will not hear claims of emotional distress that "flowed from" a heart balm claim. *Id.* at 754. The plaintiff in *Bouchard,* for example, attempted to bring a claim for emotional distress based upon his ex-wife's alleged attempts to alienate his children

---

**3.** "It shall be unlawful for any person, either as a party or attorney, or in behalf of either, to file, serve or cause to be filed or served, or threaten to file, serve or cause to be filed or served, any process or pleading, in any court of the state, setting forth or seeking to recover a sum of money upon any cause of action abolished by this article, whether such cause of action arose within or without the state." N.Y. Civ. Rights L. § 81.

"Any person who violates any of the provisions of this article shall be guilty of a felony which shall be punishable by a fine of not less than one thousand dollars nor more than five thousand dollars, or by imprisonment for a term of not less than one year nor more than five years, or by both such fine and imprisonment, in the discretion of the court." N.Y. Civ. Rights L. § 83.

from him after a divorce. Because Connecticut had barred damages actions for alienation of affection, the plaintiff's claim was not cognizable even when framed as a claim for infliction of emotional distress. *Id.* In reaching this conclusion, the court examined the factual basis for the plaintiff's claim, which included the ex-wife encouraging the children not to communicate with him, and stated that any action "stemming from the alienation activities" would be barred by statute. *Id.*

The same principles apply in situations where plaintiffs attempt to recharacterize heart balm actions as fraud claims. In *Tuck v. Tuck*, 18 A.D.2d 101, 102, 238 N.Y.S.2d 317 (N.Y.App.Div.1963), the plaintiff alleged that the defendant staged a fraudulent marriage ceremony, falsely led her to believe that they were married, lived with her as if they were husband and wife, and then later had an affair with another woman and told the plaintiff that they never had been legally married. The plaintiff sued, alleging "fraudulent inducement" to enter the marriage. *Id.* at 103. The New York Appellate Division held that the complaint should have been dismissed, because "the gravamen of the plaintiff's cause of action are the fraudulent promises and the fraudulent pretense of a marriage. The damages she would recover are exactly those which were recoverable in the former breach of promise action." *Id.* at 105. Since New York had abolished such a cause of action, any claim sounding in breach of promise to marry was not cognizable.

The Connecticut Supreme Court has also made clear that an action for fraud may not be maintained as a method of circumventing § 52–572b. *Piccininni*, 429 A.2d at 888. A fraud action relating to a promise to marry only may be maintained in Connecticut for "restitution of specific property or money transferred in reliance on various false and fraudulent representations, apart from any promise to marry, as to their intended use." *Id.* at 888–89. Thus, a plaintiff was permitted to maintain an action where he sued to recover money spent renovating the defendant's house in reliance on defendant's promise that she would marry him and allow him to move in with her. *Id.* However, the Supreme Court carefully distinguished an action to regain property from one "to recover for the breach [of a promise to marry] itself." *Id.* at 889.

### D. Special Duty of Care

In addition to the exception for actions for return of specific property, one Connecticut court has recognized an action for professional negligence in the context of termination of a romantic relationship. In *Dufault v. Mastrocola*, 1996 WL 166471 at *1, No. CV–940543343 (Conn.Super.Ct., March 1, 1996), the plaintiff brought a malpractice action against a counselor who, he alleged, used confidential information he obtained in treatment sessions to begin a romantic relationship with the plaintiff's wife. The Connecticut Superior Court held that the therapist owed a special duty to his patient not to engage in sexual relations with the patient's wife, and that a jury could find the therapist liable for malpractice. *Id.* at *4. Therefore the court denied the defendant's motion to strike, which had been premised on the theory that the plaintiff's action sounded only in criminal conversation or alienation of affections. The court also held that the plaintiff sufficiently stated a claim for breach of fiduciary duty, because a jury could find that a fiduciary relationship existed, *i.e.*, the relationship was characterized by "a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise . . ." *Id.* at *5.

352

Plaintiff Brown has not made any equivalent allegations in the instant case triggering any exception. While she alleges that Defendant Strum was "trained in the behavioral sciences" and took advantage of her emotional weakness, she does not allege any professional or fiduciary relationship that could provide a basis for a malpractice or breach of fiduciary duty action. Thus her complaint cannot be maintained on those theories.

Finally, to the extent that Plaintiff suggests in her Objection to Defendant's Motion to Dismiss [doc. # 18] that defendant could be liable for battery or sexual assault, Plaintiff has not alleged such claims in her complaint, and therefore they are not before the Court.

"The conduct described in the complaint is dishonorable, but this court is powerless to provide plaintiff the relief she seeks." *Manko*, 1996 WL 243238 at *1. Plaintiff may not circumvent clear statutory directives by reframing her claims as fraud or infliction of emotional distress.

## IV. CONCLUSION

For the foregoing reasons, the complaint fails to state a claim upon which relief may be granted, and Defendant's Motion to Dismiss [doc. # 15] must be **GRANTED** pursuant to Fed.R.Civ.P. 12(b)(6).

The Clerk is directed to close this case.

IT IS SO ORDERED.