In the Matter of FIRST SMALL BUSINESS INVESTMENT CORPORATION, Petitioner, *v.* SAMUEL ZARETSKY et al., Respondents.

Supreme Court, Queens County, Special Referee's Part, December 15, 1966.

*Frederick P. Glick, Spencer Pinkham* and *Ruth Schoonmaker* for petitioner. *Joseph Yanklewitz* and *Nathan Landesberg* for respondents.

SAMUEL S. TRIPP, Spec. Ref. By an order dated May 20, 1965 (46 Misc 2d 328) made by Honorable J. IRWIN SHAPIRO, a Justice of this court, enumerated issues were referred to the undersigned to hear and report under CPLR 4212 '' unless the parties stipulate that the reference be to hear and determine.''

At the opening of the trial the attorneys for the respective parties consented on the record that the reference be to hear and determine (CPLR 4317, subd. [a]). They also waived formal findings in connection with the numerous issues — mostly evidentiary — delineated in the order of reference, leaving it to the

court to "state the facts it deems essential" in the disposition of this proceeding (CPLR 4213, subd. [b]).

This is a turnover proceeding under CPLR 5225 (subd. [b]), supplementary to a judgment obtained by petitioner against the respondent Samuel Zaretsky (hereinafter referred to as "debtor") on December 2, 1963 for $174,075.69. It was commenced on January 26, 1965, by the service of a notice and petition upon the debtor. On that day and on February 2, 1965, the three other respondents were served with process. They are the issue of the debtor's marriage on July 26, 1939 to Pauline Zaretsky, who died on September 15, 1964. Respondent Sandra Nebrasky (hereafter referred to as "Sandra") was born on July 13, 1942; was married on May 27, 1961, and is the mother of two children. Respondent "John" Zaretsky is the debtor's son Gary, born August 26, 1945; he is a student in the senior class at Long Island University. Respondent "Jane" Zaretsky is the debtor's daughter Anne, born November 28, 1946; she is a student in the junior classs at the University of Miami on temporary leave of absence.

Tasty Salads, Inc., a New Jersey corporation, borrowed from petitioner $150,000 pursuant to a loan agreement dated April 25, 1962. The debtor, the owner of all of the issued stock of the borrower, guaranteed the prompt payment of this loan, and the recovery of the judgment here involved was based upon that guarantee. Incorporated in the foregoing loan agreement prepared by the petitioner is the following:

#### "AFFILIATION

Zaret Realty Corp., a corporation of the State of New York, is owned by the wife of Samuel Zaretsky. Samuel Zaretsky controls Tasty Salads Inc. Zaret Realty Corp. owns real estate and leases a part of the real estate owned by it at 195 Wilson Avenue, Brooklyn, New York, to Tasty Salads Inc. Zaret Realty Corp. also owns other real estate."

Zaret Realty Corp. (hereafter referred to as "Zaret") is a New York corporation whose certificate of incorporation was filed with the Secretary of State on September 27, 1950. Five certificates of stock of that corporation, numbered 1, 2, 3, 4 and 5, were issued to the debtor on October 9, 1950. According to the stock and transfer ledger, the sum of $5,000 was paid for each share, or a total of $25,000. That ledger also reflects the following assignments by the debtor of the separate certificates registered in his name:

No. 1 to his wife, Pauline, on February 2, 1951;
No. 2 to his wife, Pauline, on October 9, 1950;

No. 3 to his daughter, Anne, on October 17, 1950;
No. 4 to his daughter, Sandra Nebrasky, on October 17, 1950;
No. 5 to his son, Gary, on October 17, 1950.

Replacement certificates were never issued pursuant to the foregoing assignments. Yet, by a carbon typewritten paper signed by Anne, Sandra and Gary on April 15, 1960, original certificates numbered 3, 4 and 5, respectively, were purportedly assigned to their mother, Pauline, with entries to that effect dated April 15, 1960, in the stock and transfer ledger. Certificate numbered 6, dated April 15, 1960, for all of the issued five shares of stock but not entered in the afore-mentioned ledger, however, bears the name of Pauline Zaretsky as owner. On the reverse side is her purported assignment, dated June 1, 1963, to her daughter Sandra Nebrasky. No new or replacement certificate pursuant to such assignment was issued and no transfer tax stamps were ever affixed to any of the six certificates or to the stubs.

The thrust of the supplemental petition verified March 22, 1965 is that the debtor originally owned the five certificates of stock issued to him and that he never intended to give them to his wife Pauline or to his children Anne, Sandra and Gary; that these certificates were not delivered to and accepted by the alleged transferees and therefore title never vested; that there was no consideration for Pauline's assignment of certificate number 6, nor was there any intent to give it to Sandra, nor was there a delivery and acceptance sufficient to constitute a gift *inter vivos*; that in any event, Pauline, without title to the five shares represented by that certificate, could not give it to Sandra. Accordingly, claims the petitioner, the aforesaid shares of stock always were and continue to be the personal **property** of the debtor, who has exercised indicia of ownership over them ever since they were originally issued to him, and his purported transfer thereof was illusory and fictitious.

Although the next of kin of Pauline who died intestate[1] were served with process, only the debtor and his daughter Sandra, who now claims ownership of the subject five shares, answered the supplemental petition. By an order of this court dated August 24, 1965, however, the default of Anne and Gary in

---

1. There was no administration because Pauline had no assets in her name at her death. The debtor, however, qualified pursuant to a decree of the Surrogate's Court, Queens County, dated March 1, 1965, rendered on petitioner's application for the issuance of limited letters of administration restricted to the defense of petitioner's Federal court action in Florida to set aside as a fraud on creditors a mortgage made by the debtor to the decedent. (Surrogate's Ct., Queens County, File No. 224-1965.)

answering was opened and the answer interposed on behalf of their father and adult sister was deemed their answer. (*Matter of First Small Business Inv. Corp.* v. *Zaretsky*, N. Y. L. J., Aug. 11, 1965, p. 9, col. 1.)

In that answer, petitioner's material allegations were put in issue and the "Affiliation" statement contained in the loan agreement of April 25, 1962 was asserted by way of the affirmative defense of estoppel. In paragraph "FOURTEENTH" of the answer it was claimed that "in extending  *  *  * credit  *  *  * and in entering into and making the loan  *  *  *, petitioner did not rely upon any representations concerning the stock of Zaret Realty Corp., did not extend credit based upon any connection between the judgment debtor, Samuel Zaretsky, and the said Zaret Realty Corp., [and] knew at all times that the shares of stock of Zaret Realty Corp. were the personal property of Pauline Zaretsky, the deceased wife of the respondent, Samuel Zaretsky ".

Respondents misconceive the nature of this proceeding when they state on page 16 of their posttrial brief that fraud " is a necessary element " and that " lack of fraud in this case and estoppel milutates [*sic*] against the petitioner and justifies the dismissal of the petition ". This, however, is not a case of fraud and deceit. If it were, then reliance, one of the five essential elements (*Ochs* v. *Woods*, 221 N. Y. 335, 338), would be negated by the " Affiliation " statement and a recovery in fraud rendered impossible since all five elements must be found to exist. (*Brackett* v. *Griswold*, 112 N. Y. 454, 467.) As for estoppel, that is a doctrine which " rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances." (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292–293; *Triple Cities Constr. Co.* v. *Maryland Cas. Co.*, 4 N Y 2d 443, 448; *Meaney* v. *Loew's Hotels*, 26 A D 2d 263, 265.) It can hardly be claimed that the respondents or any of them relied upon and in so doing changed their position as the result of any " word or deed " of the petitioner. The statement in the " Affiliation " that the debtor's wife owned all shares of stock of Zaret, upon which the defense of estoppel rests was, if anything, the representation of the debtor and the borrower, Tasty Salads, Inc., that he controlled, not of petitioner.

Nor is this proceeding, as claimed on page 19 of respondents' brief, one " to set aside transfers ". Mr. Justice SHAPIRO has already held that in the instant special proceeding, " where the

ownership of and the right to levy upon particular property is involved, resort to a plenary action is no longer necessary. If the interest of the third person is purely possessory or custodial, title in fact being in the judgment debtor, the property is subject to disposition under CPLR 5225 (subd. [b])." (*Matter of First Small Business Inv. Corp.* v. *Zaretsky,* 46 Misc 2d 328, 330.) In *Matter of Ruvolo* v. *Long Is. R. R. Co.* (45 Misc 2d 136, 146), it was held that a proceeding such as this is "plenary in that the court can adjudicate rights and interests in the debt or fund which is the subject matter of the proceeding." So here, may the respondents' rights and interests in the subject five shares of Zaret stock be adjudicated and a declaration made, if warranted by the preponderance of evidence, that it was the debtor, not his wife, who owned these shares of stock when they were originally issued to him on October 9, 1950; that he made no real or effectual transfer of title and consequently the shares are subject to levy.

We have here record proof that the original five shares of Zaret stock were registered in the debtor's name for a stated consideration of $25,000. Yet he claimed at the trial, without a shred of supporting proof, that these shares were never his; that from the very beginning they belonged to his wife, Pauline, and no one else and that she alone invested in the newly formed corporation $10,000, the only money that went into it. This sum, he claimed, was derived from the proceeds of sale of a building at 341 East 109th Street, New York City, which she purchased in May, 1941[2] with some part of about $20,000 to which at times he referred as gifts from her parents following her marriage to him in July, 1939 and at other times as inherited from them. The proof shows, however, that her mother died in 1939 and her father on December 7, 1961; and that since March 1, 1961, the Hudson County, New Jersey, Welfare Board contributed $161 a month to his nursing care at the Hebrew Home for the Aged in Jersey City, New Jersey. The balance of the $25,000 consideration paid for the five shares, claimed the debtor, was the $15,000 purchase-money mortgage made by Zaret when it acquired the premises at 145 Wilson Avenue, Brooklyn, New York, with the $10,000 down payment supplied by his wife in 1950. At that time, according to the debtor, he had a net worth of some $250,000.

The only other real property that Zaret ever owned is located at 181-14 Jamaica Avenue, Jamaica, New York, which it acquired from the Borden Company on September 30, 1959 for $225,000

2. The debtor claimed that his wife sold this parcel "about 1950 or '51" and that she repurchased it a short time later, finally selling it in 1957.

pursuant to a contract dated August 28, 1959 with the debtor as purchaser, pursuant to which he was given the right to assign said contract "to a corporation formed or to be formed". A memorandum in the seller's file states that the down payment of $20,000 was by check signed by the debtor, drawn on the account of Tasty Food Products, the trade name of a business in which he had a 50% interest with one Oscar Sternberg. There was no claim, much less proof, that this down payment was not the debtor's property or that he was reimbursed therefor. When about 75% of this property was sold by Zaret in October, 1964, the purchaser's attorney stated that it was the debtor with whom he dealt primarily as the representative of the seller, although the contract was already signed by his son-in-law, Gene Nebrasky, when it was delivered to him. The deed was likewise signed by the latter, but at the closing.

As already noted, the stock and transfer ledger reflects an alleged transfer to the debtor's wife of his original certificate No. 2 for one share of stock on October 9, 1950, and original certificate No. 1 for another share on February 2, 1951. When he allegedly transferred certificates Nos. 3, 4 and 5, each for one share, to each of his three children, on October 17, 1950 in consideration of love and affection, Anne was not quite 4 years of age, Sandra not quite 8 years of age, and Gary not quite 5 years of age. Notwithstanding the foregoing, the debtor testified that he delivered all five of the foregoing certificates to his wife in 1950 and that he did not "know if the children were around". When asked: "Did you hand all five of them to her at the same time?", he replied: "There was no reason not to hand her the five * * * Yes, yes". He also stated that he indorsed each certificate in her presence before delivering them to her. When reference was made to the indorsement on October 17, 1950 of certificates numbered 3, 4, 5 (allegedly assigned to his infant children), he replied: "That's when I gave her the certificates".

I do not believe that the original certificates ever belonged to the debtor's wife and find that they were his from the very beginning and so issued to him. Of course, he was "free to dispose of his property, if in fact he disposes of it" (*Naclerio* v. *Naclerio*, 13 A D 2d 331, 333, affd. 11 N Y 2d 1091). I find, however, that he did not in fact dispose of any of the shares of stock which are the subject of this proceeding. A gift "is a voluntary transfer of any property or thing by one to another without consideration". To be effective "it must be executed". (*McKenzie* v. *Harrison*, 120 N. Y. 260, 265.) It was held in *Mazza* v. *Cillis* (267 App. Div. 266, 269) that the burden of proof

rests upon the one claiming a gift to establish the following elements: " (1) an intention of the donor to give; (2) delivery to donee of the thing given; (3) a present change from donor to donee of exclusive and absolute dominion and ownership; and (4) acceptance by donee. (*Matter of Van Alstyne,* 207 N. Y. 298; *Beaver* v. *Beaver,* 117 N. Y. 421; *Young* v. *Young,* 80 N. Y. 422.) "

That burden was not carried in this case by the required preponderance of believable persuasive proof. Obviously, if the debtor delivered the five certificates of stock to his wife in 1950 because, as he said at the trial "I know I gave it to her because I had to give her. It belonged to her ", he could not have intended to make a gift thereof to her. Certainly, in those circumstances, there could have been no delivery at the same time of certificates numbered 3, 4 and 5 to his three infant children with intent to make a gift thereof to them. Although acceptance of a gift may be implied when it is beneficial to the donee, that occurs only when the gift is " otherwise complete ". (*Beaver* v. *Beaver,* 117 N. Y. 421, 429.) Here there was no delivery to the children with intent to make a gift of three of the five certificates and there was no intention to make a gift by the alleged delivery of the five certificates to the debtor's wife. In short, there could be no gift either to the children or to the wife since intention without delivery of the gift or delivery without intention to make a gift strip the transaction of the required completeness to effectuate a change of title (*id.*).

Thus the three children had no property interest in the three shares that they could have transferred to their mother by the assignment dated April 15, 1960 and their mother had no property interest in the five shares of which she could make a gift to her daughter Sandra. The latter testified that a few weeks before the death of her mother she handed an envelope to her with instructions " To hold on to it " without telling her what it contained. When Sandra opened this envelope after the death of her mother on September 15, 1964, she then discovered that it contained certificate No. 6 for five shares of Zaret stock.

Although the debtor swore as late as the trial that he delivered the five certificates originally registered in his name to his wife in 1950 because they were her property, he signed, on September 8, 1960, a personal financial statement for the purpose of borrowing money from Manufacturers Trust Company in which he represented the following as part of *his* assets:

" 50% Int. in Tasty Food .......... $164,900.10
100% ″ ″ Zaret Realty ......... 168,789.15."

Again on May 8, 1961, when the debtor testified before a Referee appointed by an order of the Supreme Court, Kings County, in proceedings to qualify him as surety in connection with an appeal taken by Zaret from a judgment in favor of Louis Engel & Co., Inc. (16 A D 2d 702; Kings County Clerk's Index No. 1778–1960), he gave the following answers under oath to questions by Zaret's attorney, Mr. Kalmanson:

'' Q. You are the sole and only stockholder of Zaret Realty? A. I am the only owner of Zaret Realty. One hundred percent. There are no persons who own stock in that corporation.

'' Mr. Leshaw: You asked the question?

'' Mr. Kalmanson: That's right. A. Nobody but myself.''

He shifted his position on April 25, 1962 when called upon to guarantee personally petitioner's loan to his corporate business, Tasty Salads, Inc., and stated in the '' Affiliation '' that '' Zaret Realty Corp., a corporation of the State of New York, is owned by the wife of Samuel Zaretsky.''

Respondents did not produce the corporate books and records of Zaret with the exception of the certificate of incorporation, the Stock and Transfer Ledger and six certificates of stock. There can be no doubt, however, that the debtor was president of the corporation, although he claimed that no meetings were held at which he '' was elected to something ''. He also was the only person who could and did sign corporate checks, some even for his personal use or account. To this day he is authorized to sign checks on the Zaret checking account, notwithstanding that his son-in-law, Gene Nebrasky, is now president. As of November 13, 1964, his daughter Sandra, as secretary-cashier, certified him as treasurer to the Chase Manhattan Bank with authority to sign checks and the corporate resolution attested to the fact that she was the secretary, her husband the president and the debtor the treasurer of Zaret, who alone could singly make deposits and withdrawals, loans, credits and security. The signature card indicates that this account was closed on August 27, 1965.

The credible and persuasive evidence adduced at the trial inevitably leads to the conclusion that it was the debtor and not his wife who owned the five shares of Zaret stock when they were originally issued to him and that he continues such ownership to date notwithstanding the various purported assignments to which reference has been made. These were not real or sufficient to divest the debtor of his property interest in the five shares of stock here sought to be applied to the payment of the balance of petitioner's judgment against him.

The petition is granted in accordance and the respondents given a 30-day stay from the date of service upon their attorney of a copy of the judgment to be entered hereon, with notice of entry.