ROBERTSON, Justice
(dissenting).
I respectfully dissent. I am unable to agree with the majority that there is no el *551 ement of estoppel in this case. In my opinion, this is a classic case where every element of estoppel is present and where the doctrine should be applied in the interest of fair dealing and justice.
By virtue of Mrs. Frazier’s repeated and steadfast refusal to follow the unanimous recommendation of all of her doctors, who included general practitioners, orthopedic surgeons and neurosurgeons, that she should he operated on for herniated inter-vertebral discs at the L-4 and L-5 levels, she was able to build up a case of total and permanent disability and to effect a lump sum settlement of $11,833.16. Immediately after receiving this very advantageous settlement, she went back on everything she had said over the last three years about fearing this major operation and never consenting thereto, and demanded of her employer and insurance carrier that they furnish her this specific operation and pay for it.
She thus attempted to take advantage of her own wrong in deliberately misleading her employer and insurance carrier and the Workmen’s Compensation Commission into approving and paying a lump sum settlement of $11,833.16 based on a rating of total and permanent disability. Depending on the truthfulness of her oft repeated sworn statements that she would never submit to an operation for herniated discs, they acted to their disadvantage when they paid a very generous award based on total and permanent disability.
I am in accord with the decision in J. H. Moon & Sons v. Hood, 244 Miss. 564, 144 So.2d 782 (1962), wherein it was held that the allowance and receipt of a commuted lump sum settlement under Section 6998-19(j) Mississippi Code 1942 Annotated (1952) does not bar the payment of future necessary medical and hospital expenses. Moon is clearly distinguishable from this case. Hood, the employee, dealt fairly and justly with J. H. Moon & Sons, the employer. He tried to get well and took the treatments and medicines recommended by the doctors. Estoppel was not pled and no attempt was made to prove it.
It is interesting to note that in the present case the appellants paid some medical and hospital expenses which they felt were bona fide after the lump sum settlement of $11,833.16 had been paid and completed.
They balked only when Mrs. Frazier went back on her sworn testimony (which they had believed and acted on to their great disadvantage), completely reversed herself and demanded that they pay for an operation that for three years she had steadfastly and repeatedly refused to consent to.
Estoppel and waiver are defined in 15 Words and Phrases (Supp.1968) as follows :
“It is the essence of 'estoppel by conduct’ that the one asserting it must have been influenced to change his position in reliance upon the conduct of the one sought to be estopped. Friedman v. Libin, 157 N.Y.S.2d 474, 480, 4 Misc.2d 248.” Id. at 48-49.
“ ‘Waiver’ and ‘estoppel’ are often used synonymously although they are not necessarily the same, but the doctrine of estoppel lies at the foundation of the law of waiver because estoppel arises as a result of the voluntary conduct of one party ivhereby he is precluded from asserting a right as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse. Arnold Bernstein Shipping Co. v. Tidewater Commercial Co., D.C.Md., 84 F. Supp. 948, 952.” Id. at 48.
“ ‘Estoppel’ rests upon one party’s word or deed upon which another rightfully relies, and, so relying, changes his position to his injury and when that occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances. First Small Business Inv. Corp. v. Zaret- *552 sky, 275 N.Y.S.2d 960, 965, 52 Misc.2d 375.” (Emphasis added). Id. at 42.
In the attorney-referee’s first order, dated July 25, 1963, the employer and carrier were ordered to pay temporary total disability from December 30, 1961, the date of the injury, through May 14, 1962, and thereafter to pay for permanent partial disability at the rate of $14.14 per week. Both the claimant and defendants accepted the attorney-referee’s order, and no motion was made for review. The defendants paid the compensation to the claimant and also paid the attorney’s fee allowed, and apparently in good faith all parties accepted the attorney-referee’s order as binding.
On October 4, 1963, the claimant, Mrs. Frazier, through her attorneys, petitioned for a reopening of this cause. The cause was reopened and the attorney-referee on January 8, 1964, found that the claimant was totally and permanently disabled and increased her weekly payments to the maximum allowed by law. The full Commission on April 16, 1964, affirmed the attorney-referee’s finding that the claimant was totally and permanently disabled.
The employer and carrier appealed to the Circuit Court from the order of April 16, 1964, but decided to pay for total and permanent disability in accordance with the Commission’s order and secured an order from the circuit judge on May 27, 1964, dismissing their appeal.
From the date of her injury, December 30, 1961, and during the course of these hearings and proceedings, Mrs. Frazier persistently and repeatedly refused to submit to an operation unanimously' recommended by all the doctors as being the only way she could reasonably hope to get some relief. The attorney-referee and the Commission believed her when she said that she would never under any circumstances submit to an operation to remove the herniated discs. They acted on her solemn word and found that without the operation she was 100% disabled and entitled to weekly compensation for total and permanent disability. The employer and carrier believed her solemn word, and acted to their disadvantage in dismissing their appeal and agreeing to pay her for total and permanent disability.
Thereafter, an application for lump sum settlement was filed by the claimant on July 14, 1964, and on July 24, 1964, the Commission ordered that a full lump sum settlement be made. The amount of this unilateral settlement, $11,833.16, arrived at with no notice to the employer and insurance carrier, and no opportunity to object, was promptly paid by the appellants because they had already committed themselves to their disadvantage to pay weekly compensation based on total and permanent disability, they believing she was sincere when she repeatedly said she would never consent to an operation.
28 American Jurisprudence Second, Es-toppel and Waiver, Section 77 at 712-714 (1966) says:
“As a general thing, not only must the party claiming an estoppel have believed and relied upon the words or conduct of the other party, but also he must have been thereby induced to act, or to refrain from acting, in such a manner and to such an extent as to change his position or status from that which he would otherwise have occupied. However, a conscious change of position is not necessary; this element of estoppel is satisfied where a person’s position is changed for him to his detriment and prejudice by the acts of the other party.”
The authority for the last statement is United States Fidelity and Guaranty Company v. Rice, 241 Miss.'307, 130 So.2d 924 (1961).
So from whatever angle or light this particular case is viewed, all elements of estoppel are clearly present.
*553 The dissenting commissioner, Honorable Brad Dye, Jr., quickly got to the heart of the matter when he said:
“The question involved here is whether the actions of the claimant in this instance estopped her from requiring disc surgery from the defendants. This Commissioner feels that this should be answered in the affirmative.
“The employer has an obligation imposed upon him to return the injured employee to a position where she can again become gainfully employed if the nature of the injury is such that this is possible. According to Dunn’s Mississippi Workmen’s Compensation, Section 212, of the 1965 Cumulative Supplement, ‘The purpose of unlimited medical services is to assure restoration of the employee to the maximum usefulness that he can attain under the physical impairment resulting from the injury and this is the established yardstick by which benefits are to be measured.’
“Yet, the employer should not be responsible for additional medical expenses which the claimant has in the past consistently refused. The claimant in this case was advised of the need of disc surgery. An offer of such surgery was tendered by the employer. This, the claimant refused. The award of compensation benefits was made, based on the claimant’s condition without surgery. According to Dunn, supra, 90% of those who have had disc operations were enabled to return to their former employment. Of this number, 90% could be expected to have some residual limitation of motion and a modest degree of disability, but not sufficient to interfere with the patient’s normal work activity. Had this patient agreed to disc surgery when it was first recommended, she would presently, in all probability, be back in the labor market in a job similar to the one she had prior to her injury. If the ruling of the majority of the Commission is followed, then the very purpose of having unlimited medical will be defeated, for claimants will be encouraged to refuse the best treatment in order to be awarded compensation for a greater wage earning loss than would be rendered with the best treatment. The principle of estoppel should prevent this from occurring.
“The employer should not be expected to provide the surgery now requested after having paid compensation benefits, for permanent and total disability. The law certainly does not contemplate injured employees requiring employers to pay maximum benefits for partial disability. If this had been the case, the Legislature would have so stated in the law.
“Once this claimant refused surgery, was given a wage earning loss based on her condition without disc surgery, applied for and received a 13(j) settlement, then she should be estopped from requiring surgery at the expense of the employer. The financial burden of disc surgery should now be borne by this claimant who has already been compensated by the defendants for permanent and total disability.” (Emphasis added.)
I do not think that we can abrogate our responsibility of applying the law of estop-pel under the peculiar facts of this case under the guise of interpreting a statute of the Legislature. Implied in every enactment of the Legislature is the presumption that the parties will deal fairly and justly with each other and that one party will not mislead and take advantage of another. Implied also is the presumption that laws will be equally and uniformly applied without respect to persons. This is not a case for interpreting a statute so that one party will be given an undue advantage over another; it is a case for applying the doctrine of estoppel where one party has deliberately misled another party into acting *554 to his disadvantage. Neither Mrs. Frazier, nor anybody else, should be allowed to profit by her own wrong.
GILLESPIE, P. J., and BRADY and PATTERSON, JJ., join in this dissent.