DONALD TAYLOR *v*. STANLEY KEEFE

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued October 7—decided November 14, 1947

*Anthony E. Grillo,* with whom, on the brief, was *Hubert C. O'Keefe,* for the appellant (plaintiff).

*John A. Mele* and *Lester H. Aaronson,* for the appellee (defendant).

BROWN, J. This is an action on behalf of a minor son to recover of the defendant for the alienation of his mother's affections. The trial court sustained the defendant's demurrer to the complaint and, upon the plaintiff's failure to plead further, entered judgment for the defendant, from which the plaintiff has

appealed. The following facts stand admitted upon the demurrer. For many years the plaintiff had been living happily with his mother. In 1943 the defendant by his arts, blandishments and seductions alienated her love and affection and destroyed the happiness of the plaintiff's home. In consequence, the plaintiff has suffered great distress of body and mind and has lost the love, affection and society of his mother. As a further result, he has lost much happiness, has been forced out of the home which he had with his mother, and has been denied her social and moral support, guidance and protection. It is also conceded that the plaintiff's father and mother are divorced and that custody of the plaintiff as a minor child was awarded to the mother.

The sole question for determination is whether a minor child can maintain an action for alienation of affections against one who has alienated from him the affections of his mother. The question has never been passed upon by this court, and no appellate court of last resort has recognized a cause of action in the plaintiff under such circumstances. There appear to be but three reported decisions in which the question has been ruled upon. In two of these, relief was granted where a father's affections had been alienated, and in the other it was denied where those of a mother were in question. The plaintiff contends that although this court has never recognized such a cause of action the time has now come when it should do so. The defendant takes the position that a child's right to his mother's affection is a natural right only, as distinguished from the legal right which a spouse has to the love and affection of

his mate by virtue of the marriage contract, and that the practical difficulties of extending the protection of the law to the former are the reason why courts have not recognized and should not recognize a right in the plaintiff to the relief which he seeks.

In considering the nature of the mutual right of husband and wife each to enjoy the love and affection of the other, we have said: "The gist of an action for alienation of affections is the loss of consortium. 'This is a property-right growing out of the marriage relation and includes the exclusive right to the services of the spouse—and these contemplate not so much wages or reward earned as assistance and helpfulness in the relations of conjugal life according to their station—and the exclusive right to the society, companionship and conjugal affection of each other.' *Valentine* v. *Pollak,* 95 Conn. 556, 561, 111 A. 869." *Maggay* v. *Nikitko,* 117 Conn. 206, 208, 167 A. 816. The concrete inquiry is whether, under the present conception of the family relationship, a minor child's natural right to the love and affection of his mother should be accorded by the law the same protection as a husband's or wife's property right of consortium. The nature of the question is well set forth in the editorial comment in 162 American Law Reports 825, where it is pointed out that the underlying problem is, in its last analysis, a sociological rather than a legal one; that a child has an interest in his parents' affection and company which the courts under our system of law have the power to "legalize" by recognizing a right of action for its protection; but that the vital query is whether it is wise for the courts to exercise their power of lawmaking in this particular instance.

Of the two decisions chiefly relied upon by the plaintiff, one is the case of *Daily* v. *Parker,* 152 F. 2d

174, decided by the Circuit Court of Appeals, Seventh Circuit, in 1945. There, four minor children sued a married woman for enticing their father to leave them and their home to go to live with her and to refuse to contribute further for their maintenance and support. The court, at page 177, held "that a child today has a right enforceable in a court of law, against one who has invaded and taken from said child the support and maintenance of its father, as well as damages for the destruction of other rights which arise out of the family relationship and which have been destroyed or defeated by a wrongdoing third party." The court, in the words of the American Law Reports note, supra, "based its conclusion on the change in the accepted view of the status of the wife and the children and their rights and obligations as members of the family, which, according to the court, lead from the old concept of the husband and father as the lord and master of his family to the recognition in modern times of mutual rights and obligations possessed by all the members of the family."

In the other case, *Johnson* v. *Luhman,* 330 Ill. App. 598, 71 N. E. 2d 810, five minor children sued a woman for alienating the affections of their father and depriving them of his support and society, including their rights to his paternal care and to the security of a family life. In upholding the right of action in the plaintiffs, the court cited with approval the reasoning and decision in the *Daily* case, decided a few months earlier. Referring to the change that has taken place in the conception of the family, it pointed out (p. 604) that under the early common law "The father spoke and acted for the family unit and the individual members thereof had no distinct identity. Hence, it was stated in 3 Blackstone's

Commentaries 143 (1765), 'The child hath no prop-
erty in his father.' It is common knowledge, how-
ever, that a transition has taken place in our con-
ception of the family, and in the law which reflects,
in a measure, our social standards. The family is
now a co-operative enterprise with correlative rights
and duties among all members thereof. . . . The
children . . . are presently regarded more as
responsible individuals than as subservient charges
. . . . they are entitled to both the tangible in-
cidents of family life, such as food, clothing and
shelter, and to the intangible, though equally signifi-
cant elements of affection, moral support, and guid-
ance from both of the parents." The court conclud-
ed that the nature of the present-day status of the
child, so described, gave rise to a right in the plain-
tiffs warranting the creation of the remedy sought,
even though unsupported by binding precedent,
since the defendant's conduct had destroyed "the
children's family unit . . . and deprived them of
. . . the security afforded by [their father's] af-
fection and presence."

*Morrow* v. *Yannantuono,* 152 Misc. 134, 273
N. Y. S. 912, reaches a contrary result. In that case
the infant plaintiff sued the male defendant for
wrongfully depriving him of the affection, comfort
and love of his mother by enticing her away and
harboring her. The court, after stating the plain-
tiff's claim that, inasmuch as the family is a legal
unit, when another by his wrongful act interferes
with such unit each member sustains an injury for
which he has a cause of action, pointed out the dis-
tinction between the claimed cause of action and
that which a husband or wife has for the loss of
consortium predicated on the marriage contract,
and ruled that the plaintiff had stated no valid cause

of action. Referring to the practical danger of holding to the contrary, the court said (p. 135): "I am convinced that to uphold this complaint would open our courts to a flood of litigation that would inundate them. It would mean that everyone whose cheek is tinged by the blush of shame would rush into court to ask punitive damages to compensate them for their distress of body and mind and the damage that their reputation suffered in the community." While the validity of the court's "so-called practical reasons" has been challenged (20 Corn. L. Q. 255), it has been cogently suggested that, notwithstanding there seems no theoretical reason for denying the relief claimed on the basis of a child's right to the "consortium" of his parents, "numerous practical obstructions . . . inhibit application of this reasoning." 83 U. of Pa. L. Rev. 276. Among the difficulties enumerated are (1) possibility of a multiplicity of suits; (2) possibility of extortionary litigation by virtue of the relative tenuousness of the child's relationship; (3) inability to define the point at which the child's right would cease, inasmuch as the status itself hypothesizes mutability, for although a spouse is, barring extraordinary circumstances, always a spouse, the very nature of childhood implies an eventual change to adulthood; and (4) the inability of a jury adequately to cope with the question of damages, particularly because damages thus assessed are apt to overlap, in view of the number and different ages of the children.

These difficulties suggest persuasive reason why as a matter of policy this court should not recognize the validity of the cause of action claimed. Reference to a specific situation may serve to illustrate the practical difficulty of carrying the "family unit" theory to its logical conclusion. Under it, the parent

would have the same right of action for the alienation of the affection of the child which the plaintiff here claims for the alienation of that of his parent. Yet the marriage of a child might well give rise to a factual situation which a parent could utilize as the basis of an action against the child's spouse for alienating the child's affections. Such a possibility emphasizes the real distinction between permitting such an action in a case dependent upon the relationship of husband and wife, who have voluntarily created the unit status "for better or for worse" for life, and permitting it in a case dependent upon the relationship of parent and child, where in the course of nature the child is likely to substitute in large part for the family unit of the parents a family unit of his own. This distinction makes clear why the case of *Foot* v. *Card*, 58 Conn. 1, 11, 18 A. 1027, does not constitute a controlling precedent for recognizing a cause of action in the present case. In that case the court recognized a cause of action not previously given judicial sanction and, having done so, held that the law would attach a remedy to it and afford relief to a wife for the alienation of her husband's affections. An action brought by a parent upon the facts suggested above would require a very careful differentiation of factual situations and strict limitation upon the granting of relief, if such a cause of action were allowed.

Our decision accords with the view expressed by the only authoritative writer who to our knowledge has specifically dealt with the subject; Prosser, Torts (1941 Ed.) p. 937; and it is worthy of note that the American Law Institute, Restatement of Torts, makes no mention of such right in the child and expressly negatives (3 Torts § 699) liability to the parent for alienation of a child's affections. See

also *Pyle* v. *Waechter*, 202 Iowa 695, 210 N. W. 926. The following facts also tend to confirm our conclusion. First, so far as appears, only in the three cases mentioned has such a claim for relief ever been urged upon any court. Second, since 1935 at least twelve states, including our neighbors Massachusetts and New York, have by statute taken away the right of a husband or wife to bring an action for alienation of affections. Keezer, Marriage & Divorce (3d Ed.) § 191. The former fact indicates the absence of any need for such relief sufficiently general to induce the bar to press for its recognition by the courts. The latter suggests widespread appreciation of the fact that the social advantages of granting the right claimed would be outweighed by the disadvantages. See *Fearon* v. *Treanor*, 272 N. Y. 268, 273, 5 N. E. 2d 815. The refusal by the court to grant it does not violate article first, § 12, of the Connecticut constitution, guaranteeing redress "for an injury done" to the plaintiff, for "injury" as there used means a legal injury, that is, one violative of established law of which a court can properly take cognizance. A like provision of the Montana constitution was so construed by its court; *Stewart* v. *Standard Publishing Co.*, 102 Mont. 43, 49, 55 P. 2d 694; as was a similar provision in the constitution of Pennsylvania by its court in *Jackman* v. *Rosenbaum Co.*, 263 Pa. 158, 168, 106 A. 238.

There is no error.

In this opinion the other judges concurred.