DONALD F. BOUCHARD *v.* JANET J. SUNDBERG ET AL. (AC 22640)

Schaller, Flynn and Hennessy, Js.

Argued September 11, 2002—officially released November 18, 2003

*Timothy Sheehan*, for the appellant (plaintiff).

*Edward S. Hyman*, with whom, on the brief, was *Donald J. Cantor*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Donald F. Bouchard, appeals from the judgment of the trial court rendered in favor of the defendants, Janet J. Sundberg and Law-

rence E. Sundberg. On appeal, the plaintiff claims that the court improperly (1) granted Janet Sundberg's motion for summary judgment as to count two[1] of the plaintiff's amended complaint and (2) granted the defendants' motions to strike as to count one of the plaintiff's original complaint, and counts three, four and five of the plaintiff's amended complaint. We reverse in part and affirm in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. On October 8, 1999, the plaintiff served a six count complaint against each of the defendants, alleging, inter alia, alienation of affections, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with parental rights and visitation, and conspiracy to commit assault and battery.

The defendants filed a motion to strike the plaintiff's complaint on December 22, 1999. The court, *Shortall, J.*, granted the motion as to counts one through five. In response, on June 23, 2000, the plaintiff filed an amended complaint. Pursuant to Practice Book § 10-44, the plaintiff pleaded over stricken counts two through five. The defendants filed a motion to strike the amended complaint on July 13, 2000. The court granted the motion as to counts three, four and five.[2] On May 14, 2001, Janet Sundberg filed a motion for summary judgment, with supporting affidavits, as to count two of the amended complaint. The court, *Winslow, J.*, granted the motion on August 10, 2001.

The plaintiff withdrew the remaining count, count six, of the amended complaint and filed a motion for

---

[1] Count two of the plaintiff's amended complaint was brought solely against Janet Sundberg.

[2] On December 20, 2000, the plaintiff filed a notice of appeal in which he sought to reserve the right to appeal from the ruling in the court's memorandum of decision.

the court to render judgment in favor of the defendants on counts one, three, four and five, and to perfect the pleadings so that the plaintiff could file an appeal as to count one of the original complaint and counts two through five of the amended complaint. The court, *Berger, J.*, granted the motion on December 17, 2001. The plaintiff thereafter appealed. Additional facts will be set forth as necessary.

## I

The plaintiff first claims that the court improperly granted Janet Sundberg's motion for summary judgment. In support of his claim, the plaintiff argues that the court improperly concluded that the doctrine of collateral estoppel barred him from litigating the second count of the amended complaint. We agree.

The following additional facts are pertinent to the resolution of the plaintiff's claim. On June 26, 1995, the marriage of Donald Bouchard and Janet Sundberg was dissolved. In dissolving the marriage, pursuant to a separation agreement (agreement) that was signed by the parties, the court awarded joint legal custody of the parties' children,[3] whose primary physical custody was with Janet Sundberg. The agreement, which became the dissolution decree, further mandated that the parties were required to participate in counseling with their children. The stated purpose of the counseling sessions was to facilitate the reconciliation between the plaintiff and his children so that the parties could comply with the visitation provision described in paragraph 3 (c)[4]

---

[3] At the time of the dissolution, Donald Bouchard and Janet Sundberg had four minor children: Amy, sixteen years of age; Donald, Jr., fourteen years of age; Sara, thirteen years of age; and Peter, eleven years of age.

[4] Paragraph 3 (c) of the agreement states: "As a precondition to such visitation there shall be mandatory therapy and counselling involving the minor children and the parents by a therapist recommended by Dr. [James] Black and subject to further order of the [c]ourt in the event of disagreement provided, however, that such program of mandatory counselling shall not commence until 60 days subsequent to the date of [j]udgment and only then in the event that during such 60 day period [d]efendant [h]usband has not

of the agreement. On November 22, 1995, the parties stipulated to open the judgment and to modify paragraph 3 (c) of the agreement.[5] The court, *Barall, J.* approved the stipulation.

On or about December 12, 1995, the plaintiff filed a motion to compel, seeking to require Janet Sundberg to comply with the judgment of dissolution, as modified, by immediately making arrangements necessary for her and the children to attend the agreed on counseling sessions. The court, *McWeeny, J.,* on July 10, 1996, ordered that Anne Phillips, a psychotherapist, counsel the children as soon as possible.

The plaintiff alleges that Janet Sundberg and the children did not comply with the counseling order. Therefore, on March 3, 1997, the plaintiff filed a motion for contempt in an effort to enforce compliance with the July 10, 1996 order. The court, *Bishop, J.,* did not make a finding of contempt, but instead modified the judgment as to mandatory therapy. The modification required the plaintiff and Janet Sundberg to meet with Phillips on a weekly basis for the purpose of creating a pathway for the plaintiff's reunification with his children. It also required Phillips to meet with the minor children in September, 1997, in the plaintiff's presence, to discuss the planned therapy. As a result of that order, the minor children, Christopher, Sara and Peter, attended a counseling session with Phillips. The children, however, did not subsequently attend any counseling sessions.

---

made any attempts to contact the children or [w]ife, has not parked in or driven down Apple Tree Lane, Farmington, Connecticut, and has not made telephone calls to the children or [w]ife at their home, [w]ife's business, or any third location. The purpose of the mandatory therapy and counselling is to re-establish the relationship between [h]usband and the children so the above described visitation may occur."

[5] As modified, the relevant portion of paragraph 3 (c) states that the "program of mandatory counseling shall not commence until 60 days subsequent to . . . *November 1, 1995.* . . ." (Emphasis added.)

Consequently, on January 12, 1998, the plaintiff again attempted to enforce the counseling orders as originally entered on July 10, 1996, by the court, *McWeeny, J.*, and later modified by the court, *Bishop, J.*, by way of a motion to compel. The court, *Brennan, J.*, denied the motion after conducting a hearing[6] in which the court determined that continued counseling was not in the children's best interests. The plaintiff thereafter commenced this action in October, 1999, by way of a six count complaint that he later repleaded after the defendants' successful motion to strike counts two through five of the original complaint.

In count two of the amended complaint, which was a claim for breach of contract, the plaintiff alleged that Janet Sundberg violated the June 26, 1995 dissolution judgment, violated the terms of the parties' June 26, 1995 agreement and intentionally engaged in activities designed to alienate the parties' children from the plaintiff. With respect to the agreement, count two specifically alleged that the parties had agreed to attend mandatory therapy and counseling sessions for the plaintiff to begin reestablishing his relationship with his children.

On May 14, 2001, Janet Sundberg filed a motion for summary judgment with respect to the second count of the amended complaint with supporting affidavits from her, Amy Joyce Bouchard, Christopher Bouchard and Sara J. Bouchard.[7] The court, *Winslow, J.*, deter-

---

[6] During the hearing, the court listened to testimony from the plaintiff, Janet Sundberg, Phillips and Mary Sobin, a high school guidance counselor.

[7] In her affidavit, Janet Sundberg stated that all of her children had participated "from time to time" in therapy sessions until July, 1997. Pursuant to court order, *Bishop, J.*, the parties' minor children, Christopher, Sara and Peter, attended a session with Phillips in September, 1997. After that time, the children no longer attended the therapy session, but Janet Sundberg, however, continued to attend. Janet Sundberg claimed that she never encouraged her children to spurn the plaintiff's attempts at reconciliation.

In general, the children's affidavits provided that their mother never encouraged them to reject the plaintiff's attempts at reconciliation, to act in a hostile manner toward the plaintiff, or provide false testimony. They

mined that the underlying basis for the postjudgment orders focused on a duty to comply with the terms of the separation agreement requiring counseling. The court also concluded that the underlying basis for count two of the complaint concerned that alleged duty. Having considered the pleadings, the plaintiff's briefs and the hearing on the motion, the court, in its August 10, 2001 memorandum of decision, concluded that the second count was precluded by the doctrine of collateral estoppel in light of the plaintiff's prior motions for contempt and to compel.

At the outset, we note the appropriate standard of review. "Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) *Pitchell* v. *Williams*, 55 Conn. App. 571, 577, 739 A.2d 726 (1999), cert. denied, 252 Conn. 925, 746 A.2d 789 (2000).

Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment may be appropriate. See *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712, 627 A.2d 374 (1993). "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999).

indicated that their feelings toward the plaintiff concerned his "failure to pay any part" of their college tuition.

"Whether the court properly applied the doctrine of collateral estoppel is a question of law for which our review is plenary. . . . The fundamental principles underlying the doctrine are well established. Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 293–94, 794 A.2d 1029 (2002). We must, therefore, determine whether the issues raised in count two were actually litigated and necessarily determined on previous occasions.

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, supra, 225 Conn. 714–15.

On appeal, the plaintiff argues that summary judgment was inappropriate because the motion to compel pending before Judge Brennan sought only an order compelling Janet Sundberg to *comply* with earlier post-dissolution judgment counseling orders of the trial court. It did not, the plaintiff argues, allege or seek to determine liability or damages on the basis of a finding of a breach of contract.

To address that argument, we must determine whether the issues involved in a breach of contract

action were actually litigated and necessarily determined in the dissolution action.[8] The second count of the plaintiff's amended complaint sounds in breach of contract alleging, inter alia, that Janet Sundberg breached the terms of the parties' agreement relating to mandatory therapy and counseling involving the parties' minor children. By comparison, the underlying issue in the plaintiff's motions for contempt and to compel concerned whether Janet Sundberg violated the court's postjudgment dissolution *orders* to have the children attend counseling sessions in compliance with the judgment of dissolution.

In its memorandum of decision, the court stated that it was collaterally estopped from considering the plaintiff's second claim because the threshold issue in the motion for summary judgment was whether Janet Sundberg had a duty to comply with the terms of paragraph 3 (c) of the agreement. On the basis of Judge Brennan's decision that counseling should not continue in the best interests of the children, regarding the motion to compel, the court concluded that Janet Sundberg did not have a duty to comply with paragraph 3 (c), and, therefore, a breach of contract could not have occurred.

We disagree with the court's conclusion that the plaintiff was collaterally estopped from raising the breach of contract action. The plaintiff brought his prior motions to enforce the trial court orders in the dissolution action. Those orders focused on the custody of the children based on the parties' agreement.[9] More

---

[8] The substance of the second count is that Janet Sundberg breached the separation agreement by thwarting the plaintiff's attempts to reconcile his relationship with his children. By contrast, the issues involved in the prior motions to compel and for contempt concerned the defendants' compliance with numerous court orders in the context of the dissolution action.

[9] Paragraph three of the parties' agreement concerns the joint and legal custody of the children. Paragraph 3 (b) further explains that the parties agreed that the plaintiff could visit with the children on alternate weekends and one evening per week. As a precondition to those visitation rights, paragraph 3 (c) of the agreement required "mandatory therapy and counseling involving the minor children and the parents . . . ."

specifically, the motions concerned Janet Sundberg's failure to comply with orders requiring the attendance of the children at counseling sessions. Such orders by the court in the dissolution action centered on the issue of joint custody and were based on *equitable* considerations with respect to the best interests of the children as required by General Statutes § 46b-56 (b).[10] When considering issues of custody or visitation, "[a] court exercising its equitable jurisdiction with regard to custody has the duty to assure itself that its judgment will be implemented equitably to serve the best interests of the children . . . ." *Yontef* v. *Yontef*, 185 Conn. 275, 294, 440 A.2d 899 (1981). In making custody and visitation determinations, it stands to reason that the trial court would not consider the same issues that are central to a breach of contract action. See *Ireland* v. *Ireland*, 246 Conn. 413, 430, 717 A.2d 676 (1998) ("best interests of the child must always govern decisions involving custodial or visitation matters").

There are significant differences between the issues raised during custody and visitation matters in a dissolution action and those raised in an action for breach of contract. The purpose of a dissolution action "is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support . . . to divide the marital estate"; *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 592, 674 A.2d 1290 (1996); and to consider custody issues. By contrast, the key elements of a breach of contract action considered by the court are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages. See *Maloney* v. *Connecticut Orthopedics, P.C.*, 47 F. Sup. 2d 244, 249 (D. Conn. 1999). The finding by the court that it

---

[10] General Statutes § 46b-56 (b) provides in relevant part: "In making or modifying *any* order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . ." (Emphasis added.)

was in the best interests of the children no longer to attend counseling sessions, and, accordingly, that Janet Sundberg had no duty to comply with the prior postjudgment orders, does not require a determination of relevant issues as to whether she breached the parties' agreement, separate and apart from the orders, to support the plaintiff's attempt at reconciliation. We conclude, therefore, that the issues involved in a breach of contract action were neither actually litigated nor necessarily determined in the dissolution action and, therefore, that collateral estoppel was not a bar.

Because the court relied exclusively on the reasoning contained in the decisions of prior postjudgment dissolution motions in which the court considered only equitable issues concerning the best interests of the children with respect to Janet Sundberg's compliance with the agreement and in doing so did not necessarily have to make findings about whether she had breached the agreement, we conclude that the court improperly rendered summary judgment with respect to count two of the amended complaint.[11]

## II

The plaintiff claims that the court improperly struck count one of the original complaint and counts three, four and five of the amended complaint. We disagree.[12]

---

[11] By reversing the judgment as to that count, we are not implicitly recognizing a claim on the basis of the abolished tort of alienation of affections in conflict with our decision in part II. Although the plaintiff in paragraphs six and seven of count two of the amended complaint alleged that Janet Sundberg's actions resulted in the alienation of his children's affections, the breach of contract claim did not rest solely on those effects of the alleged breach, and the plaintiff sought damages. We also recognize that the plaintiff's breach of contract action was premised solely on allegations that Janet Sundberg had failed to comply with her agreement to support his attempts to reconcile his relationship with the parties' children.

[12] We do not reach the plaintiff's equal protection argument because that argument is premised on a presumption that a cause of action on the basis of alienation of affections exists and that anyone but parents, alienated from their child's affections, may bring an emotional distress claim on the basis of such a claim. We have determined that such a cause of action has been

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted; internal quotation marks omitted.) *Muniz* v. *Kravis*, 59 Conn. App. 704, 707–708, 757 A.2d 1207 (2000).

A

The plaintiff first claims that the court improperly struck count one of the original complaint. Specifically, the plaintiff argues that he has suffered "parental alienation," a unique and specific type of alienation of affections,[13] as a result of the actions of the defendants. Although the plaintiff acknowledges that the claim of alienation of affections has been abolished by statute, he urges us to recognize his claim on the basis of the unique factual circumstances presented in this case.

The plaintiff contends that because General Statutes § 52-572b[14] does not discuss parental alienation, such

abolished pursuant to General Statutes § 52-572b and is not recognized when brought by anyone. Accordingly, the argument fails.

[13] The common-law traditional heart balm tort of alienation of affections is a cause of action against a third party adult who "steals" the affection of the plaintiff's spouse. The tort has developed to encapsulate both the theft of a spouse's love and the destruction of a child's love for a parent. See *Zamstein* v. *Marvasti*, 240 Conn. 549, 566, 692 A.2d 781 (1997).

[14] General Statutes § 52-572b, entitled "Alienation of affections and breach of promise actions abolished," provides: "No action may be brought upon

a cause of action was not considered by the legislature and is not necessarily prohibited by the statute.[15] The plaintiff relies on *Taylor* v. *Keefe*, 134 Conn. 156, 56 A.2d 768 (1947), to support his argument.

"The language of General Statutes § 52-572b, the Heart Balm Act, does not, it is true, provide clear guidance about what forms of actions are brought within its prohibition of suits from alienation of affections or from breach of a promise to marry." (Internal quotation marks omitted.) *Piccininni* v. *Hajus*, 180 Conn. 369, 375, 429 A.2d 886 (1980) (*Peters, J.*, dissenting). Our case law, however, does.

In *Taylor*, a child brought an action against the defendant for alienation of affections where the defendant allegedly had seduced the love and affection of the mother away from the plaintiff child. *Taylor* v. *Keefe*, supra, 134 Conn. 157. The Supreme Court recognized the distinction between the legal right between spouses to one another's love and affection as compared to the child's natural rights, which the courts can "legalize" through recognition. Id., 157–58. For public policy reasons, the court did not recognize the child's cause of action under a theory of alienation of affections. Id., 161. In reaching that conclusion, the court also considered whether Connecticut should recognize a cause of action for alienation of affections brought by a parent against another person for the alienation of a child's affections.

any cause arising from alienation of affections or from breach of a promise to marry."

[15] The plaintiff argues that the statute abolished only those alienation of affection actions explicitly enumerated by the legislature that involve the loss of spousal affection and does not apply to a case in which the alienation of the affections of a minor child is alleged. General Statutes § 57-572b contains no such limiting language, and we do not intend to place such a strained construction on the statute. See *Hyman* v. *Moldovan*, 166 Ga. App. 891, 305 S.E.2d 648 (1983) (Georgia Court of Appeals refused to interpret similar statute in manner limiting abolishment of alienation claims solely to spouses).

Id., 161–62. The court declined to recognize the claim because it sounded in alienation of affections. Id. That, the plaintiff argues, left open the possibility that a parent could bring a cause of action for the alienation of his or her child's affections.

In the recent case, *Zamstein* v. *Marvasti*, 240 Conn. 549, 566, 692 A.2d 781 (1997), our Supreme Court considered that very issue. Specifically, in *Zamstein* the Supreme Court considered whether § 57-572b encompassed a claim of alienation of affections where a court-appointed psychiatrist allegedly provided information to the police concerning allegations of child molestation against the plaintiff father. Id., 551–52. It was argued that those allegations by the psychiatrist resulted in the alienation of the children from the plaintiff father. Id., 552, 565. The court determined that the claim "must fail because the legislature has specifically abolished actions based on alienation of affections." Id., 566. In reaching that conclusion, the court relied on 3 Restatement (Second), Torts § 699 (1977), which provides that "[o]ne who, without more, alienates from its parent the affections of a child, whether a minor or of full age, is not liable to the child's parent." The court concluded that the parent could not bring a claim for alienation of affections due to the loss of the child's affections.[16] *Zamstein* v. *Marvasti*, supra, 566.

In his complaint, the plaintiff alleged that the defendants alienated the children's affections from him. The

[16] In an effort to preclude the clear holding of *Zamstein* from applying in this case, the plaintiff attempts to distinguish the relationship of the parties in *Zamstein* from the relationship of the parties in the case at bar. The plaintiff notes that in *Zamstein*, the plaintiff father brought an action against a psychiatrist for alienation of affections, which, the plaintiff contends, is different from a plaintiff father bringing an action against a defendant mother with respect to the "duty of care" and "moral relationships" involved in the relationships. We do not agree. In *Zamstein*, our Supreme Court did not limit its holding to the relationship of the parties in that case. Instead, the claim failed because the claim was based on an action for alienation of affections.

plaintiff also characterizes count one of the complaint as a claim sounding in alienation of affections. Therefore, because the legislature has abolished claims for alienation of affections and our Supreme Court in *Zamstein* precluded a parent from bringing an alienation claim on the basis of a loss of a child's affections, as a matter of law, we cannot recognize the claim. The court properly struck count one of the plaintiff's original complaint.

### B

The plaintiff claims that the court improperly struck the third and fourth counts of the amended complaint, which sound in negligent and intentional infliction of emotional distress, respectively.[17] We disagree.

The plaintiff argues that § 52-572b should not serve as an absolute bar to his intentional infliction of emotional distress claim where his emotional distress emanated from the alienation of his children because intentional infliction of emotional distress is a separate and distinct claim. The defendants argue that the count essentially alleges that they caused the children to become alienated from their father and that such actions are barred by § 57-572b. Consequently, it is their position that any action stemming from the alienation activities is also barred.

The following facts are necessary to our resolution of those claims. From the face of the pleading, it is apparent that the emotional distress complained of flowed from the alienation of the children's affections. In count three, paragraph six, subparagraphs (a) through (j), of the amended complaint, the plaintiff alleged that the defendants began a course of conduct

---

[17] As those two claims involve similar legal arguments, we will consider them together and focus our discussion on the third count, which was based on intentional infliction of emotional distress. Our reasoning applies equally to the negligent infliction of emotional distress count.

that caused him emotional distress by encouraging (1) the children not to communicate with him, (2) the children to give false testimony against him, (3) the children to reject his attempts at reconciliation, (4) health care providers and educators to withhold from him information regarding the children's health and education, (5) the children not to request money from him, (6) Donald Bouchard, Jr., to change his name, (7) Donald Bouchard, Jr., to attack the plaintiff, (8) others to speak ill of the plaintiff and (9) the children to not participate in counseling. In paragraph seven of count three, the plaintiff alleged that as a direct result of those actions, the children became alienated from their father. In paragraph ten, the plaintiff alleged that the defendants conspired to alienate him from his children. Moreover, the plaintiff alleged that the defendants acted, as described, with the intention and purpose to cause him extreme emotional distress.

In its memorandum of decision, the court, *Shortall, J.*, relied on our Supreme Court's reasoning in *Zamstein* v. *Marvasti*, supra, 240 Conn. 549, to conclude that the plaintiff was precluded from asserting the emotional distress claims. While we agree with the court's conclusion, we disagree with the court's reliance on *Zamstein*.

In *Zamstein*, the plaintiff claimed that his complaint sufficiently alleged a cause of action for interference with custodial rights, and, as an alternative theory of recovery, a claim based on alienation of affections. Id., 564–65. In this case, instead of alleging alienation of affections as an *alternative* form of relief, in counts three and four, the plaintiff argues that the emotional distress *arose* from the effects of being alienated from his children. Because that distinction raises a novel issue and we disagree with the trial court's reliance on *Zamstein*, we will look to the case law of other jurisdictions.

In support of his argument, the plaintiff relies on *Raftery* v. *Scott*, 756 F.2d 335 (4th Cir. 1985). In *Raftery*, the United States Court of Appeals for the Fourth Circuit permitted the plaintiff to pursue a claim for intentional infliction of emotional distress where the distress was allegedly caused by the alienation of his children. The Fourth Circuit permitted the plaintiff to pursue his claim despite a Virginia statute, Va. Code Ann. § 8.01-220 (Michie 1981),[18] which abolished actions for alienation of affections. Interpreting the Virginia statute, the court stated that a claim for intentional infliction of emotional distress and alienation of affections were "two distinct causes of action" requiring proof of different elements. *Raftery* v. *Scott*, supra, 339 n.4. That difference, the court stated, served to dissipate the notion that permitting a claim for emotional distress, where the distress stemmed from the alienation of the parent from the child, would revive the outlawed action. Id., 340. Determining that although "a tort may have overtones of affection alienation, [that alone] does not bar recovery on the separate and distinct accompanying wrongdoing." Id., 339. The court concluded that the emotional distress claim was proper because "a cause of action should lie for psychological damage flowing from the enforced separation from the father, even, or, indeed, especially if the affection of the father had in no way abated, an entirely plausible possibility." Id., 340. Significantly, however, the parties stipulated that parental alienation would not be a basis of recovery, and the court assumed that "an action for alienation of the affection of a son brought by a father has been

---

[18] Va. Code Ann. § 8.01-220 (Michie 1981), entitled "Action for alienation of affection, breach of promise, criminal conversation and seduction abolished," provides in relevant part:

"A. Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained . . . for alienation of affection, breach of promise to marry, or criminal conversation . . . .

"B. No civil action for seduction shall lie . . . ."

abrogated by the [Virginia] statute, or never existed in the first place." Id., 339 n.3.

The defendants rely on *McDermott* v. *Reynolds*, 260 Va. 98, 530 S.E.2d 902 (2000), to distinguish *Raftery*. In *McDermott*, the Virginia Supreme Court considered whether § 8.01-220[19] barred the plaintiff husband's action against his former wife's paramour for intentional infliction of emotion distress. Id., 99. The defendant in *McDermott* noted that the action alleged would support an action sounding in alienation of affections prohibited by § 8.01-220 because it resulted in "severe embarrassment and humiliation to [the plaintiff] and his three children." Id., 100–101. The court stated that "when the [Virginia legislature] enacted Code § 8.01-220, it manifested its intent to abolish common law actions seeking damages for a particular type of *conduct*, regardless of the name that a plaintiff assigns to that *conduct*." (Emphasis added.) Id., 101. The court focused its attention on the conduct because that methodology allowed the court to consider "the legislative intent manifested in [the statute]." Id. The court concluded that the statute prohibited the claim for intentional infliction of emotional distress by relying on the legislative intent manifested in the statute, and similar statutes from other jurisdictions, to remove conduct cited in the statute from civil liability. Id. That, the court stated, was "foreclos[ing] a revival of the abolished tort of alienation of affection asserted in the guise of an action for intentional infliction of emotional distress." Id., 103.

We are persuaded by the reasoning of the Virginia Supreme Court in *McDermott*. The *Raftery* court focused its attention on the elements of the two torts and concluded that because each cause of action required different elements, the claim of intentional

---

[19] See footnote 18.

infliction of emotional distress should not have been barred despite the fact that it arose from the alienation of affections claim. We believe that when the legislature enacted § 57-572b, a statute similar to the Virginia statute that was considered by the Virginia Supreme Court in *McDermott,* the legislature expressed its intent to "abolish common law actions seeking damages for a particular type of conduct, regardless of the name that a plaintiff assigns to that conduct." *McDermott* v. *Reynolds,* supra, 260 Va. 101. In determining whether an action is barred by § 57-572b, therefore, we consider the underlying conduct alleged in the plaintiff's complaint.[20] Numerous other jurisdictions follow that reasoning. See *Stevens* v. *Redwing,* 146 F.3d 538, 544 (8th Cir. 1998) (action for intentional infliction of emotional distress cannot be maintained where underlying claim for alienation of affection is not actionable and emotional distress is the alleged consequence of same acts causing child to separate from parent); *Speer* v. *Dealy,* 242 Neb. 542, 544, 495 N.W.2d 911 (1993) (claim of interference with contract barred because damages described as flowing from claims of alienation of affections); *Weicker* v. *Weicker,* 22 N.Y.2d 8, 11, 237 N.E.2d 876, 290 N.Y.S.2d 732 (1968) (refusing to permit action for intentional infliction of emotional distress because action based on alienation of affections and would result in revival of abolished action); *Lotring* v. *Philbrook,* 701 A.2d 1034 (R.I. 1997) (disguising abolished claim of alienation of affections under cloak of negligent and intentional infliction of emotional distress claims does not avoid prior legislative abolition of statute).

It is clear from the facts alleged in the amended complaint itself that the plaintiff was attempting to recast his claim for alienation of affections as a claim for

---

[20] We note that the language of General Statutes § 57-572b supports that reasoning: "No action may be brought upon any cause *arising* from alienation of affections . . . ." (Emphasis added.)

intentional infliction of emotional distress. In particular, our reading of paragraph seven of the third count persuades us to conclude that this is nothing more than a claim for alienation of affections. As the legislature has abolished that cause of action, the court properly granted the defendants' motion to strike the third and fourth counts of the amended complaint.

## C

Finally, the plaintiff claims that the court improperly struck count five of his amended complaint. In support of his claim, the plaintiff argues that (1) the court, sua sponte, improperly amended count five to sound as a claim of custodial interference and (2) despite the amendment, the plaintiff pleaded facts sufficient to survive a motion to strike in light of *State* v. *Vakilzaden*, 251 Conn. 656, 742 A.2d 767 (1999). We disagree.

Count five of the amended complaint is labeled "intentional interference with parental rights and visitation." It contains fourteen numbered paragraphs. Paragraphs one through four are the same as those appearing in counts two through four of the amended complaint and are not specific to the claim of intentional interference with parental rights. Paragraphs five through fourteen allege that the defendants engaged in activities to alienate the parties' children from the plaintiff. Paragraph twelve alleges a physical separation and states in relevant part that "[a]s a result of the defendant[s'] actions as set forth . . . a physical separation has existed among the plaintiff and all four minor children since June 26, 1995 in that the plaintiff has not seen, *in any meaningful manner*, the minor children." (Emphasis added.) In paragraph twelve, subparagraphs (a) through (j), the plaintiff alleged that the physical separation was caused in one or more of ten ways. Subparagraphs (a) through (j) of count five are identical to subparagraphs (a) through (j) of counts three and

four of the amended complaint.[21] The court granted the defendants' motion to strike the fifth count because it concluded that this count could refer only to the recognized tort of intentional interference with custodial rights and that the plaintiff had failed to plead an extralegal taking of custody.

At the outset, we note that our Supreme Court has recognized the tort of custodial interference; *Zamstein* v. *Marvasti,* supra, 240 Conn. 566; and has also recognized that a custodial parent may be guilty of custodial interference pursuant to General Statutes § 53a-98. See *State* v. *Vakilzaden,* supra, 251 Conn. 662.

1

The plaintiff argues that the court improperly struck count five on the basis of the court's alleged sua sponte amendment of count five.

We disagree with the plaintiff's assertion that by characterizing count five of the amended complaint as sounding in the tort of interference with custodial rights, the court amended the pleading. The plaintiff cites no recognized authority supporting recovery on the basis of custodial or visitational interference of a psychological rather than a physical nature. Consequently, as pleaded, the plaintiff improperly sought the court to recognize a new tort of "intentional interference with parental rights and visitation." See *Drahan* v. *Board of Education,* 42 Conn. App. 480, 489, 680 A.2d 316 (when case requires court to determine nature of pleading, courts not required to accept precise label affixed to portions of pleading by moving party), cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996).

2

The plaintiff also argues that the court improperly struck count five in light of *State* v. *Vakilzaden,* supra,

---

[21] See part II B for a discussion of counts three and four.

251 Conn. 656. Despite the plaintiff's argument, *Vakilzaden* did not abrogate the requirement of an extralegal taking of custody and did not overrule the legal premise underlying *Marshak* v. *Marshak*, 226 Conn. 652, 628 A.2d 964 (1993) (en banc), overruled, *State* v. *Vakilzaden*, 251 Conn. 656, 662–63, 742 A.2d 767 (1999) (en banc).

In *Marshak*, our Supreme Court recognized, for the first time, the tort of custodial interference. In that case, the plaintiff wife brought a civil action seeking damages against multiple defendants for conspiracy to interfere with her custodial rights. Id., 654–66. The plaintiff alleged that her husband, with assistance, had abducted the parties' child to Israel and to Brazil. Id., 657–59. The trial court found three of the four defendants liable for having conspired with the husband to abduct the child. Id., 660–63. On appeal, the Supreme Court reversed the judgment of the trial court because it determined that at the time of the abduction, the father had joint legal custody of the child; id., 666; and "a factual predicate for any tort related to child abduction . . . is the unlawful custody of a child." Id. Relying on 3 Restatement (Second), Torts, supra, § 700,[22] the trial court concluded that a parent enjoying joint custody could not be liable for a claim of custodial interference and, therefore, did not find three of the four defendants liable. *Marshak* v. *Marshak*, supra, 226 Conn. 666, 670.

In *Vakilzaden*, the Supreme Court considered for the first time whether the tort of child abduction or custodial interference applied to a parent who had joint custody of the subject child. *State* v. *Vakilzaden*, supra, 251 Conn. 662. That case did not, as the plaintiff argues, abrogate the requirement of an extralegal taking of custody for the tort of custodial interference. The Supreme

---

[22] Comment (c) to § 700 of 3 Restatement (Second), supra, provides in relevant part: "When the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other. . . ."

Court expressly decided that a parent enjoying joint custody could be liable for the crime of custodial interference and, in that respect, overruled *Marshak*. See id., 664.

Janet Sundberg had joint legal custody of the children. The plaintiff alleged a *physical* separation on the basis of the alienation of the children's affections. A factual predicate for any tort related to custodial interference is the unlawful custody of the child. *Marshak* v. *Marshak*, supra, 226 Conn. 666; see also *Zamstein* v. *Marvasti*, supra, 240 Conn. 566. Significantly, the plaintiff failed to plead an extralegal taking of custody.[23]

Having concluded that the defendants' acts did not rise to the level of an extralegal taking of custody as required for the tort of intentional interference of custodial rights, the remaining portion of the claim sounds in alienation of affections. Again, as discussed in part II, the legislature has abolished that type of action. Consequently, the court properly struck count five.

The judgment is reversed with respect to count two of the amended complaint only and the case is remanded for further proceedings in accordance with law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[23] In essence, the plaintiff's claim attempts to equate physical separation with psychological separation. A claim of interference with custodial rights framed in terms of psychological separation is nothing more than a claim of alienation of affections. On the basis of our discussion in part II, we will not recognize such claims.